Will Cloninger, John Cloninger, Charles Costner and Tollie Cloninger were indicted for the murder of John Mauney. Tollie Cloninger was acquitted. The others were each convicted of manslaughter and sentenced respectively, in the order of their names as above, to three, two and one year each on the public roads, and appealed.
There was evidence that John Mauney was struck in the head with a baseball bat in the hands of Will Cloninger, one of the prisoners, on 3 August, 1907; that the blow caused his death, and that John Cloninger and Charles Costner aided and abetted in the killing.
There had been a ball game near Hardin, and the game was over. When Mauney received the fatal blow he had backed off the ball ground into a pea field. John Cloninger, Will Cloninger and Charles Costner, the prisoners, followed him into a pea field. In pursuing him the following transpired: John Mauney was backing and waving his bat through the ball ground, telling the crowd (the prisoners in the crowd) not to follow him. He backed twenty-five steps. Mauney (569) *Page 416 
was angry and talking loud, and seemed to be drinking. John Cloninger was facing Mauney and struck at him with his mandolin, and Mauney struck at John Cloninger with his fist once or twice. The Cloninger boys and Costner were in front of Mauney, Mauney backing. Mauney started to fall, and Costner jerked the bat out of his hand. Mauney got down and John Cloninger and Will Cloninger were on him, and Will Mauney pulled them off. Mauney got up, backed into Make Poole's arms, and John Cloninger grabbed him, and Will Cloninger hit him in the head with a bat and knocked him down, and John kicked him in the side. In backing, Mauney was saying: "Men, stand off of me." Will Cloninger, John Cloninger and Charles Costner were in front of Mauney (all three related). He backed and they followed him. Costner wrung the bat out of his hand. Charles Hester hit Will Cloninger with a baseball bat when they were backing Mauney. It was a bat that he took from Clifton Knight. John Mauney backed; John Cloninger went towards him with mandolin. Costner was told not to follow Mauney; he cursed and said: "Let him put down that bat." Will and John Cloninger got hold of Mauney, and Costner took the bat away. They got Mauney down, and John Cloninger was pulled off of him. Mauney backed and John Cloninger followed him; they were knocking; Mauney stumbled and fell. Will Cloninger ran up and struck him in the head — the fatal blow. John Cloninger kicked him several times on the ground.
1. As to evidence against Will Cloninger: He struck the fatal blow with a baseball bat when Mauney was unarmed and down, and being held by Make Poole.
2. As to evidence against John Cloninger: He was knocking Mauney in a willing fight, and aided Will Cloninger by holding Mauney, who was unarmed, while Will Cloninger knocked him down with a (570) baseball bat, and then he kicked Mauney when he was down.
3. As to the evidence against Charles Costner: Costner followed Mauney with the Cloningers, he (Mauney) saying: "Men, stand off of me"; jerked and wrung the bat out of Mauney's hand, and then Will Cloninger got the bat from Costner and knocked Mauney down with it. Costner cursed Mauney and said: "Let him put down that bat," and took the bat from him, when John and Will Cloninger had hold of Mauney, and then let Will Cloninger have the bat to hit the fatal blow. The character of the defendants was shown to be that of desperate, lawless men.
1. Will Cloninger was drinking the day of the homicide; had been indicted three times; twice for fighting with deadly weapons, and once for retailing. *Page 417 
2. John Cloninger had been indicted several times for fighting, and was then under indictment for retailing.
3. Charles Costner had been indicted for fighting with a deadly weapon; indicted for retailing and distilling in Federal Court.
Reputation of Charles Costner year or so before homicide, "bad for selling liquor."
Reputation Will Cloninger, "regular blind tiger." All the boys were dealers in liquor except Tollie.
The prisoner's brief does not rely on the first three exceptions. The fourth exception is that his Honor narrated facts not found in the evidence, but an examination of the record shows that the court was stating the contentions of the State, and there was evidence in their support.
The prisoner's exceptions 5 and 6 are to the following instruction: (571) "You should likewise consider the evidence as to the character of the witnesses, whether that evidence was elicited from the witnesses themselves on cross-examination or otherwise, or whether it was told by witnesses who were called to testify as to the character of the other witnesses." Read in connection with that part of the charge which directly follows it, there was no error: "Evidence as to the character of a witness, who is not a defendant, is competent only for the purpose of enabling the jury to place the proper estimate upon the value of the testimony of the witness whose character is under consideration. . . . It is for the jury to say in such case whether the witness told the truth or not; but it is competent to introduce evidence as to the character of a witness in order that the jury may know the character of a witness whose testimony they are considering, and to be thereby aided in determining the weight which is to be given the testimony of such witness."
The seventh exception is to his Honor's charge, as follows: "Evidence as to the character of a witness who is likewise a defendant is competent for two purposes: (1) to enable the jury to place the proper estimate on the testimony of the defendant who is testifying as a witness; (2) as substantive evidence upon the question of guilt or innocence." This part of the charge, when applied to the facts in the case, is correct. Where a defendant goes on a witness stand and testifies, he does not thereby put his character in issue, but only puts his testimony in issue, and the State may introduce evidence tending to show *Page 418 
the bad character of the witness solely for the purpose of contradicting him. This is the rule laid down in S. v. Traylor, 121 N.C. 674, and S. v.Foster, 130 N.C. 676. But when a defendant introduces evidence himself to prove his good character, then that evidence is substantive evidence, and may be considered by the jury as such.
(572) The defendants, Will Cloninger and Charles Costner, put their characters in issue by examining witnesses to prove their good character. John Cloninger did not do this, nor even did the State put on evidence to show his bad character, nor for the purpose of contradicting his testimony. The State merely cross-examined him, as it had a right to do, under Revisal 1634. The accused, by becoming a witness in his own behalf, is liable to cross-examination to impair his credit, like any other witness, and the cross-examination is not restricted to matters brought out on the direct examination. The eighth exception is a repetition of the fifth and sixth.
Exceptions 9, 10, 11 and 12 present the "transitory homicidal plea" as to Will Cloninger. The presumption is that he was sane. The burden was on him to show the contrary. S. v. Potts, 100 N.C. 465. Will Cloninger testified: "I guess I was unconscious. . . . I saw Mauney coming towards me, he said he was going to kill me, and I thought he was. I then struck him." His Honor charged: "If the person at the time of the homicidal act was in a state of mind to comprehend his relation to others, or, knowing the criminal character of the act, was conscious that he was doing wrong, he was responsible; otherwise he was not, and such would be your verdict." This charge follows S. v. Haywood, 61 N.C. 376, which has been approved since on this point. S. v. Potts, 100 N.C. 465; S. v. Davis, 109 N.C. 784;S. v. Branner, ante, 559, and in other cases.
Exceptions 13, 15 and 16. John Cloninger and Charles Costner were aiders and abettors. There is abundant evidence to sustain a conviction where the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection. Presence alone may be regarded as encouraging. S. v. Jarrell,141 N.C. 725. To like effect is S. v. Finley, 118 N.C. 1161 to 1176, where the Court sustained a conviction of murder in the second degree against the two defendants when it appeared that they (573) were "deviling" the deceased and teasing him, and that one of them struck him and killed him. The court in that case held that the other was just as guilty, inasmuch as "deviling" and "teasing" was an unlawful act.
Here the prisoners are more guilty, for they were making an assault on the deceased, driving him backwards into a pea field. He repeatedly warned them to stand back and they, with oaths, kept pressing on him. *Page 419 
Charles Costner not only lent his presence, but was the man that was endeavoring to take the bat away from him, cursing and telling deceased to give up the bat, and finally jerking the bat out of deceased's hands. As soon as he jerked the bat out of deceased's hands, Will Cloninger took the bat and hit him.
Exceptions 14 and 17 have been considered in the other exceptions. Exception 18 is abandoned, not being in the brief.
This was an important trial. It was a trial of a crowd of diorderly [disorderly] rioters at a baseball game. The painstaking judge, as appears from the charge, very jealously guarded the rights of the prisoners, giving them many instructions which they asked and some to which they were not entitled. They have had every benefit and advantage of a fair trial.
Indeed, the prisoners have cause to congratulate themselves that they were not tried before a sterner judge, for Charles Costner, the man who disarmed deceased at the time he was in need of a weapon, only received a sentence of one year's imprisonment; John Cloninger, the man who provoked the difficulty by hitting at deceased with a mandolin, the man who held deceased while his brother struck the fatal blow, and who kicked the deceased after he had been stricken, only received two years imprisonment; Will Cloninger, the prisoner, who entered the difficulty voluntarily and thereupon became the principal actor, and who finally struck the fatal blow by leaning over his brother's shoulder, hitting deceased, an unarmed man, who was then in (574) the grip of two other men, in the head with a baseball bat, thereby producing death, only received three years imprisonment.
No error.