WINBORNE, J., dissenting.
STACY, C. J., and BARNHILL, J., concur in dissent.
The criminal charge against defendant is set forth in the following warrant:
"Recorder's Warrant — No. 5715.
State of North Carolina.
Robeson County — Recorder's Warrant.
Joseph A. Perry, being duly sworn, complains and says that at and in said County, Lumberton Township, on or about the 9th day of August, 1941, Alonzo Johnson did unlawfully and wilfully aid and abet in prostitution and assignation contrary to the form of the statute and against the peace and dignity of the State. Joseph A. Perry. Sworn to and subscribed before me this 9th day of August, 1941. Robert Weinstein, Solicitor." Defendant pleaded "Not guilty."
Defendant was tried on the above warrant and convicted in the recorder's court and found guilty. From the sentence imposed, he appealed to the Superior Court, where he pleaded "Not guilty." He was then tried by a jury and found guilty. The defendant made several exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
At the close of the State's evidence and at the conclusion of all the evidence, the defendant in the court below made motions for judgment of nonsuit. N.C. Code, 1939 (Michie), sec. 4643. The court overruled these motions and in this we can see no error.
In S. v. Mann, 219 N.C. 212 (214), is the following: "In considering a motion to dismiss the action under the statute, we are merely to *Page 775 
ascertain whether there is any evidence to sustain the indictment; and in deciding the question we must not forget that the State is entitled to the most favorable interpretation of the circumstances and of all inference that may fairly be drawn from them. S. v. Carlson, 171 N.C. 818; S. v.Rountree, 181 N.C. 535. It is not the province of this Court to weigh the testimony and determine what the verdict should have been, but only to say whether there was any evidence for the jury to consider; if there was, the jury alone could determine its weight. S. v. Cooke, 176 N.C. 731., S. v.Carr, 196 N.C. 129, 144 S.E. 698."
The evidence on the part of the State is to the effect that two soldiers stationed at Fort Bragg, on 9 August, arrived at Lumberton from Fort Bragg about 8:00 o'clock p.m. About 12:00 or 1:00 o'clock they were parked across the street from the Airport Service Station. Sergeant Joseph A. Perry, one of the soldiers, testified, in part: "There was a house over there, I didn't know what house it was, we just turned around there; we were turning around to come back to Lumberton. I had never been to that house before. When we were in front of the house across the road from the airport station we saw Johnson. This airport station is on the Charlotte Road. Johnson was in his car. He came around to us and asked if we were M. P.'s (Military Police) and we told him No; he said if we wanted some women he would take us to Dreamland, and we told him we were not interested. He said `Wait a minute,' and he went into a house about 30 feet from where we were turning around and knocked on the door, and he talked to someone. I couldn't tell whether it was a man or a woman. He came back out. He said, "There are some women in there, you can go in there if you want to; you ought to give me 50c for my trouble.' Neither of us soldiers got out of our car then and went in the house, about five minutes later. About five minutes later John Doyle went in the house. After Johnson had this conversation with us he went back to his car. . . . I had never seen Johnson before that night. I don't know where Dreamland Service Station is, never heard of it. I do not know anything else about it."
John T. Doyle, the other soldier, testified, in part: "We went back to that same house Johnson had gone in and stopped, and I went in the house; there were girls in there; I only saw one, I guess she was an Indian girl. When I got in there I talked with her; I went to bed with her and had sexual intercourse with her; I paid the girl. That was the same house Johnson had told us we could go in. Perry was in his car while I was in the house having sexual intercourse with this girl."
Rebecca Jacobs testified, in part: "Q. State whether or not you have ever seen Johnson in his taxi carry any men out to that house? Ans.: I saw him sometimes, a few times, couple of times."
We think this evidence of Rebecca Jacobs competent to corroborate Doyle; the probative force was for the jury. *Page 776 
The defendant denied the charge and proved a good reputation; the probative force of the evidence was for the jury to decide.
There were no exceptions to the charge of the court, it was clear and able, covering the law applicable to the facts. The court charged, in part: "In order for one to aid and abet the commission of a crime, he must do something that will indicate, encourage or assist the actual perpetrator in its commission. Mere presence, even with the intention of assisting, cannot be said to have incited, encouraged or aided the perpetrator unless the intention to assist was in some way communicated to him. A person aids when, being present at the time and place, he does some act to render aid to the actual perpetration of the crime, though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or who either commands, advises, instigates or encourages another to commit a crime. A person who, by being present, by word or conduct, incites another to commit a criminal act or one who so far participates in the commission of the offense as to be present to the knowledge of the person actually committing the crime for the purpose of assisting, if necessary." S. v.Hoffman, 199 N.C. 328 (333).
In 2 C. J., p. 1024, Aider and Abettor is defined as follows: "One who advises, counsels, procures, or encourages another to commit a crime, whether personally present or not at the time and place of the commission of the offense; any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances and approves the same." S. v.Hart, 186 N.C. 582; S. v. Dail, 191 N.C. 234; S. v. Tyndall, 192 N.C. 559;S. v. Baldwin, 193 N.C. 566.
The statute, N.C. Code, supra, sec. 4357, reads: "The term `prostitution' shall be construed to include the offering or receiving of the body for sexual intercourse for hire, and shall also be construed to include the offering or receiving of the body for indiscriminate sexual intercourse without hire. The term `assignation' shall be construed to include the making of any appointment or engagement for prostitution or any act in furtherance of such appointment or engagement."
Section 4358: "It shall be unlawful: (7) To engage in prostitution or assignation, or to aid or abet prostitution or assignation by any means whatsoever."
The warrant was drawn in the language of the statute and is sufficient in law. S. v. Stanton, 23 N.C. 424; S. v. Crews, 128 N.C. 581; S. v.Leeper, 146 N.C. 655; S. v. Carpenter, 173 N.C. 767; S. v. Maslin,195 N.C. 537.
In S. v. Abbott, 218 N.C. 470 (476), speaking to the subject, it is written: "In S. v. George, 93 N.C. 567 (570), Ashe, J., for the Court, said: `The indictment strictly follows the words of the statute, and that *Page 777 
is laid down in all the authorities as the true and safe rule. It is true there are some few exceptions, but we do not think they embrace this case.'S. v. Leeper, supra; S. v. Puckett, 211 N.C. 66 (73)."
"If the defendants desired further information, the statute provides that they could have a bill of particulars. Revisal, sec. 3244 (N.C. Code, 1939 [Michie], sec. 4613). S. v. Pickett, 118 N.C. 1233." S. v. Leeper,supra, at p. 661.
In S. v. Puckett, supra, we find: "In S. v. Wilson, 121 N.C. 650
(655), it is said: `Besides, duplicity is ground only for a motion to quash. Being cured by the verdict, it cannot be used as ground for a motion in arrest of judgment. Whar. Cr. P. L. and Pr., secs. 255, 760.' 16 C. J., p. 1258, sec. 2791."
The sufficiency of a warrant for aiding and abetting prostitution, using the language employed in the warrant in the instant case, has been decided in the case of S. v. Waggoner, 207 N.C. 306, and adversely to the defendant. One of the counts in the warrant on which the defendant was convicted in that case charged that he "did aid and abet in prostitution and assignation, against the statute in such case made and provided, and against the peace and dignity of the State." This language is almost identical with that contained in the warrant in the instant case. There was a motion below to quash the warrant, which was overruled. The Supreme Court found no error, and it is stated at p. 307, that: "The warrant was drafted in accordance with the provisions of C. S., 4358."
None of defendant's exceptions and assignments of error can be sustained, for the reasons given. The General Assembly has made aiding and abetting in prostitution a crime. The defendant has had a fair and impartial trial and has been convicted by a jury of his country. In law we find
No error.