### STATE v. MOZELLE WILLIAMS.

(Filed 2 May, 1945.)

**1. Criminal Law § 8: Homicide § 2—**

Where two persons are present, encouraging each other in a common purpose resulting in a homicide, both are principals and equally guilty.

**2. Same—**

An aider and abettor is one who advises, counsels, procures or encourages another to commit a crime, whether personally present or not at the time and place of the commission of the offense.

**3. Homicide § 25—**

In a prosecution of two persons for murder, where the State's evidence tended to show that deceased was standing near another person on a city sidewalk, when the first defendant called upon deceased to stop bothering his cousin and the deceased said he was not bothering anyone, whereupon the first defendant shot a pistol at deceased twice, and then the second defendant took the gun from the first defendant and shot at deceased twice, deceased falling to the ground at the second shot and dying on the way to the hospital, there being only one wound on deceased, a shot through the heart, there is ample evidence for the jury and the first defendants' motion for judgment as of nonsuit, G. S., 15-173, was properly denied.

APPEAL by defendant Mozelle Williams from *Burgwyn, Special Judge,* at September Extra Term, 1944, of MECKLENBURG.

The appellant, Mozelle Williams, and one DeWitt Tate were tried upon a bill of indictment charging them with the murder of Frank Porter, upon which, however, the solicitor for the State announced that he would not ask for a verdict of guilty of murder in the first degree, but would ask for a verdict of guilty of murder in the second degree or of guilty of manslaughter as the evidence might warrant. The jury returned a verdict of guilty of manslaughter as to both defendants, and from judgment of imprisonment, predicated on the verdict, the defendant Mozelle Williams appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes and Moody for the State.*

*G. T. Carswell for defendant Williams, appellant.*

SCHENCK, J.   The evidence tended to show that Frank Porter, the deceased, and his common law wife, Ruthie Mae Porter, entered an eating place on Mint Street in Charlotte, called "Johnny's," that Ruthie Mae Porter left the eating place and was followed out by the deceased, Frank Porter, and they two were standing on the sidewalk, and one Alma Bradford was standing near-by on the sidewalk; that appellant, Mozelle Williams, came out of the eating place onto the sidewalk and said to deceased Frank Porter, "Don't be bothering my cousin, Alma Bradford," and Frank Porter said he wasn't bothering anybody; at that time Williams pulled out a pistol and shot twice at Porter and then DeWitt Tate appeared suddenly on the scene and took the pistol from Mozelle Williams and shot twice at Frank Porter and he fell; Frank Porter was put into a taxi and driven to a hospital, but died just before he arrived there; "the gun was pointing towards Frank Porter at the time that Mozelle Williams shot at him twice, but I don't know whether Mozelle hit Frank or not. After Mozelle Williams shot, Frank was still standing on the sidewalk in the same spot, and DeWitt Tate ran out where Mozelle was in the street and grabbed Mozelle's gun. At the time that Mozelle Williams shot him, Frank Porter did not say anything and did not do anything. He was still standing up, and he did not appear to be shot. . . . He fell the second shot when DeWitt shot. . . . Yes, sir, that's when he fell." Both Mozelle Williams and DeWitt Tate made statements to the officer arresting them to the effect that they did not know which one hit Frank Porter; they both stated that Frank Porter was jabbing something into Alma Bradford, and Mozelle Williams told Porter not to do anything to his girl or cousin, and as Frank Porter started toward him Mozelle Williams walked into the street, pulled his gun and began shooting and DeWitt Tate came up and grabbed his gun away from him and shot at Frank Porter. Mozelle Williams and DeWitt Tate were friends. Upon a *post mortem* examination made at the hospital only one bullet wound was found upon the body of Frank Porter, it being "a hole in his chest on the left side near the heart, . . . the hole was a bullet wound over his heart," and in the opinion of the physician who made the *post mortem* examination this bullet wound killed the deceased.

The exception most stressfully pressed on this appeal was to his Honor's refusal to grant the motion of appellant to dismiss the action or for judgment of nonsuit lodged when the State had produced its evidence and rested its case. G. S., 15-173. The appellant, in his brief and oral

argument, contended that since there is no evidence in the record that the defendant Tate and the defendant Williams had seen each other at any time prior to the time Tate ran out in the road and jerked the pistol out of Williams' hand, and no evidence that either of them had had any trouble with the deceased Frank Porter prior to the time of the shooting, there is no evidence upon which a finding of a conspiracy could be predicated, and since from the evidence adduced it cannot be determined which defendant fired the fatal shot, the motion for judgment as of nonsuit should have been sustained. This contention may have been tenable had the State relied upon establishing the existence of a conspiracy to make out its case. *S. v. Finley,* 118 N. C., 1161, 24 S. E., 495. However, the State did not rely upon establishing the existence of a conspiracy to make out its case against the appellant. The theory of the prosecution is not that there was a conspiracy between the defendant Williams and his codefendant Tate to kill or assault the deceased Porter and therefore it was immaterial which one fired the fatal shot, since by virtue of a conspiracy existing between them they both were principals in the unlawful homicide. The State was permitted to, and did, rely upon the theory that both of the defendants were present, encouraging each other in a common purpose, and were therefore principals and equally guilty. *S. v. Jarrell,* 141 N. C., 722, 53 S. E., 127. The evidence tends to show that the appellant Williams followed the deceased to the sidewalk and shot twice at him; that he was present when his codefendant Tate took the pistol from him and fired twice at the deceased. The evidence is plenary that either one of the shots fired by the appellant Williams or one of the shots fired by his codefendant Tate killed Porter. If the evidence tends to show that the appellant Williams fired the fatal shot he cannot complain that the case as to him was submitted to the jury; if, on the other hand, the evidence tends to show that his codefendant Tate fired the fatal shot and the appellant Williams was present, the evidence of his mere presence is evidence of his aiding and abetting his codefendant and was sufficient to carry the case to the jury as to him. "Though when the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement," and in contemplation of law this was aiding and abetting. Wharton's Criminal Law (12 Ed.), ch. 9, sec. 246; *S. v. Jarrell, supra; S. v. Cloninger,* 149 N. C., 567, 63 S. E., 154; *S. v. Allison,* 200 N. C., 190, 156 S. E., 547. "An aider and abettor is one who advises, counsels, procures or encourages another to commit a crime, whether personally present or not at the time and place of the commission of the offense. 2 C. J., 1024." *S. v. Hart,* 186 N. C., 582, 120 S. E., 345.

SPEARMAN *v.* BURIAL ASSN.

We are of the opinion, and so hold, that there was sufficient evidence to carry the case as to the defendant Williams to the jury at least upon the theory that the said defendant was aiding and abetting in the unlawful homicide of Frank Porter and for that reason was guilty as a principal and that his Honor properly overruled said defendant's demurrer to the evidence and motion to dismiss the action lodged when the State had introduced its evidence and rested its case.

We have examined the exceptions relating to his Honor's charge and find in them no substantial merit.

On the record we find

No error.