### STATE v. GLENN HOLLAND.

(Filed 31 October, 1951.)

**1. Assault § 13—Circumstantial evidence held sufficient to show that defendant was present and gave active encouragement to perpetrator of assault.**

Evidence tending to show that defendant engaged a cab, directed the driver to go by a junk yard to pick up defendant's friend, who was waiting in semi-darkness, that defendant, under pretext of going for a drink of liquor, diverted the cab from the main highway toward the destination he had given to a deserted side road, and that while the three of them were riding in the cab, the driver was struck several times and knocked unconscious with a piece of iron pipe similar to pipe found later at the junk yard, *is held* sufficient to be submitted to the jury on the charge of felonious assault in violation of G.S. 14-32, since the circumstances are such as to clearly indicate that defendant was present and, if he did not actually make the assault himself, was acting in concert with his friend in making the felonious assault.

**2. Criminal Law § 8b—**

Persons present at the scene who aid, abet, assist or advise the commission of the offense, or who are present for such purpose to the knowledge of actual perpetrator, are principals and are equally guilty.

**3. Criminal Law § 52a (1)—**

On motion to nonsuit, the evidence must be taken in the light most favorable to the State.

**4. Criminal Law § 52a (3)—**

Circumstantial evidence is a recognized instrumentality in the ascertainment of truth, and where the circumstances fall into a pattern which clearly indicates that defendant was present and acted in concert with the perpetrator of the offense, it makes out a *prima facie* case and is properly submitted to the jury.

**5. Robbery § 3—**

Evidence tending to show that a victim of an assault was knocked unconscious, that some seven and one-half hours thereafter he was found in

his bed with his cab parked in the driveway, that some money was still on his person, but without evidence in reference to his money in the interim, *is held* insufficient to be submitted to the jury on the question of the guilt of his assailants of the offense of armed robbery, notwithstanding the victim's testimony that some of his money was gone, since the circumstances show no more than an opportunity for his assailants to have taken the money with equal opportunity for it to have been lost or disposed of in other ways. G.S. 14-87.

**6. Criminal Law § 52a (3) ——**

In order to be sufficient to be submitted to the jury, circumstantial evidence must exclude any reasonable hypothesis of innocence, and circumstances which merely show an opportunity for defendant to have committed the offense but raise a mere conjecture of his guilt are insufficient.

APPEAL by defendant from jury trial before *Gwyn, J.,* at May Term, 1951, and judgment entered by *Phillips, J.,* at August Term, 1951, of CALDWELL.

Criminal prosecutions tried upon two bills of indictment, consolidated for trial by consent, charging the defendant with (1) felonious assault, in violation of G.S. 14-32; and (2) armed robbery, in violation of G.S. 14-87.

After the State had produced its evidence and rested its case, the defendant moved for judgment of nonsuit in each case. The motions were overruled and exceptions were noted. The defendant then, after announcing he would offer no evidence, renewed his motions for nonsuit, and to the adverse rulings of the court thereon, exceptions again were duly noted.

The jury returned a verdict finding the defendant guilty of assault with a deadly weapon with intent to kill, inflicting serious injury not resulting in death, and armed robbery, as charged in the bills of indictment.

Thereupon, by consent, Judge Gwyn entered an order continuing the prayer for judgment and also continuing the defendant's motion to set the verdict aside until the August, 1951, term of court, at which term Judge Phillips, then presiding, entered judgments imposing penal servitude in each case of "not less than five nor more than ten years," with direction that the sentences run concurrently. From the judgments so pronounced, the defendant appealed, assigning errors.

*Attorney General McMullan, Assistant Attorney General Bruton, and Robert B. Broughton, member of staff, for the State.*
*Kenneth D. Thomas for defendant, appellant.*

JOHNSON, J. The exceptions brought forward by the defendant test only the sufficiency of the evidence to carry the two consolidated cases to

the jury over the defendant's motions for judgment of nonsuit, made in apt time under the provisions of G.S. 15-173.

1. *The felonious assault case.*—The evidence bearing upon this case discloses that in September, 1950, William Penley, the prosecuting witness, age 22, was living in Hickory, North Carolina, and driving a taxicab. On Saturday night, 23 September, 1950, between eight and nine o'clock, Penley picked up the defendant at Hutto's Grocery, just outside of Hickory. The defendant, after arranging with Penley to take him to North Wilkesboro, requested that they drive by Whitten's junk yard and get a friend who was to accompany the defendant. This was done. The friend was picked up at the junk yard, which is about 150 yards from where the defendant got in the cab. At the junk yard there was a building, and scrap was piled up all around it. The friend was at the back of the building. He was standing there alone. It was getting dusk dark but Penley, the taxi driver, said he could see all right. When the cab stopped, the defendant's friend got in the back seat. The defendant remained in the front seat. Penley did not know the defendant's friend,—said he had never seen him before. As he got in the cab, there was no conversation except the defendant stated, "I used to work with this boy here." The defendant then said he wanted to go get a drink before they went to North Wilkesboro, and after crossing the Catawba River, going toward Lenoir, the defendant told Penley to pull off at the next side road. He did so. When they had gone a short distance down the side road, the defendant requested Penley to pull off on a dirt road, and while the cab was traveling down this road it struck a small bump,—"slowed down for the bump,"—and that was the last thing Penley remembered until "he woke up eight days later in the hospital," suffering from serious head wounds.

Penley was found the following morning about 3:30 o'clock in his own bed at Hickory in an unconscious condition. The taxicab was parked in his yard and was locked. His glasses were broken and lying in the front seat. There was an iron pipe about 18 inches long and 1½ inches in diameter lying on the front seat of the cab. It had blood on it. The cab was bloody inside,—more blood on the back than in front. "Looked like the man had laid in the back longer than in the front. . . . It looked like he had laid in the back seat for several hours." Some pieces of pipe material "were later found at the junk yard." The evidence discloses that Penley had a fractured skull, near his right ear. The ear was cut off except for a small piece of skin holding it. He had two cuts near the right ear,—"One behind the ear and the other just a little farther behind than that one." He had four deep cuts across his forehead, each cut being approximately four inches long. The attending physician gave as his opinion that the wounds were not produced by a knife, but

by a blunt instrument. The doctor further said that Penley's uncon-
sciousness most likely "was produced at the time the blow was delivered."
On cross examination the doctor also stated that in his opinion a person
sitting in the front seat alongside Penley could not have inflicted the lick
from that angle, "but if the head were turned, it might be possible. I can't
say for sure as to that." The prosecuting witness remained in the hospital
fifteen days and did not regain his memory until some five weeks later.

John Clark, owner of the taxicab, testified that Penley called him and
said he had a trip to North Wilkesboro and that he, Penley, said he
knew one of the parties but did not tell who he was. R. W. Turkelson,
of the State Bureau of Investigation, testified he was called in to investi-
gate the case; that he was unable to develop any finger prints in or upon
the automobile or on the iron pipe. He said he visited the area where
the attack is alleged to have taken place and that "there is no one that
lives on the . . . road that winds up around the hill and there are no
houses on it." This witness further testified that Penley for a time could
not remember anything that happened on the night of 23 September, but
later, on 2 November, he told the witness that "the fellow who had been in
the cab that night used to work with him at the Blue Ridge Ice Cream
Company. . . . said he didn't know his last name but that he used to call
him 'Glenn,' " said he knew him well. The witness found the defendant's
name on the records of the Ice Cream Company and then "Penley said
that was his last name." The witness Turkelson showed Penley a picture
of the defendant and "he said that was the man." The defendant was
arrested under warrant issued 11 November, 1950. His friend who was
in the cab has not been found or identified.

The foregoing evidence points unerringly to the fact that Penley's
wounds were inflicted either by the defendant or by his friend who was
sitting on the back seat of the taxicab. And if it be conceded, as con-
tended by the defendant, that the evidence is insufficient to support a
finding that he, from his seat alongside of Penley, inflicted the blow or
blows, nevertheless this record impels the view that the defendant and
his friend were acting by pre-arrangement. It was the defendant who
arranged the trip. First, he engaged the cab, ostensibly for a trip to
North Wilkesboro. Then, he directed the driver to go by the junk yard
where the friend was waiting in semi-darkness. Next, it was the de-
fendant who, under the pretext of going for a drink of liquor, diverted
the cab from the main highway onto a lonely, deserted side road along
which Penley, without previous warning, was struck with a piece of iron
pipe similar to pipe found later at the junk yard where the friend was
picked up. Thus, the events leading up to the assault fall into a pattern
which clearly indicates concert between the defendant and his friend,
and where this appears each may be found equally guilty. *S. v. Gibson,*

226 N.C. 194, 37 S.E. 2d 316; *S. v. Williams,* 225 N.C. 182, 33 S.E. 2d 880; *S. v. Hart,* 186 N.C. 582, 120 S.E. 345; *S. v. Kendall,* 143 N.C. 659, 57 S.E. 340; *S. v. Jarrell,* 141 N.C. 722, 53 S.E. 127.

It is settled law that all who are present (either actually or constructively) at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose, to the knowledge of the actual perpetrator, are principals and are equally guilty. *S. v. Jarrell, supra* (141 N.C. 722); *S. v. Gaston,* 73 N.C. 93; *S. v. Hoffman,* 199 N.C. 328, 154 S.E. 314.

"A person aids when, being present at the time and place, he does some act to render aid to the actual perpetrator of the crime though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or either commands, advises, instigates or encourages, another to commit a crime." *S. v. Johnson,* 220 N.C. 773, at p. 776, 18 S.E. 2d 358.

This evidence, taken in its light most favorable to the State, as is the rule on motion to nonsuit (*S. v. Hovis,* 233 N.C. 359, 64 S.E. 2d 564), is sufficient to justify a finding that the defendant's presence amounted to active encouragement of his friend in the commission of the felonious assault shown to have been committed. *S. v. Williams, supra* (225 N.C. 182, 33 S.E. 2d 880); *S. v. Allison,* 200 N.C. 190, 156 S.E. 547; *S. v. Jarrell, supra* (141 N.C. 722).

In *S. v. Williams, supra* (225 N.C. 182, at p. 184), it is stated: "Though when the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement, and in contemplation of law this was aiding and abetting."

True, the evidence relied on here is largely circumstantial, but even so, such evidence is a recognized and accepted instrumentality in the ascertainment of truth, *S. v. Cash,* 219 N.C. 818, 15 S.E. 2d 277; *S. v. King,* 219 N.C. 667, 14 S.E. 2d 803.

Here, the series of incriminating facts, taken in its entirety, makes out a *prima facie* case. The court below properly submitted the felonious assault case to the jury. The verdict and judgment in that case will be upheld.

2. *The armed robbery case.*—The evidence is briefly this: Penley said: "I had about $100 on or about my person and all except $49.91 was gone." On cross examination he testified: "I don't know the exact date that I found that money was gone, but I woke up in the hospital 8 days later. . . . I don't know for sure how much was missing, but do know some was missing." It was in evidence that nine people lived at the Penley home, either members of his family or distant relatives. John Clark, owner of the cab, said when he saw the cab parked in the Penley yard next morning "the money changer was there. It had $6.00 in it."

The foregoing evidence is inconclusive. It is full of hiatuses. Approximately 7½ hours elapsed from the time of the assault until Penley was found in bed with his car parked in the driveway. The evidence shows nothing in reference to his money during this interim, nor during the ensuing period of eight days while he was unconscious. True, the evidence of the brutal assault bulks large as tending to furnish a motive for robbery, but this seems to be negatived by most of the other facts and circumstances developed in the case. It is significant that $49.91 of the money on Penley's person was not missing, and that the money changer with $6.00 in it was found in the cab the next morning. These circumstances are inconsistent with the theory of robbery.

The evidence here discloses no more than an opportunity for the defendant to have taken the money, with equal opportunity for it to have been lost or disposed of in other ways. This is insufficient. *S. v. Murphy,* 225 N.C. 115, 33 S.E. 2d 588.

Where circumstantial evidence is relied on to convict, as in the present case, the rule is: "that the facts established or adduced on the hearing must be of such a nature and so connected or related as to point unerringly to the defendant's guilt and to exclude any other reasonable hypothesis." *S. v. Harvey,* 228 N.C. 62, at p. 64, 44 S.E. 2d 472. "Moreover, the guilt of a person charged with the commission of a crime is not to be inferred merely from facts consistent with his guilt. They must be inconsistent with his innocence." *S. v. Webb,* 233 N.C. 382, at p. 387, 64 S.E. 2d 268. Evidence "which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury." *S. v. Vinson,* 63 N.C. 335, at p. 338.

A careful perusal of the record leaves us with the impression that the evidence is insufficient to support the armed robbery indictment and that the defendant's motion for nonsuit should have been allowed.

The results, then, are:

In the armed robbery case: Reversed.

In the felonious assault case: No error.