STATE v. JAMES R. KELLY.

(Filed 30 November, 1955.)

**1. Criminal Law § 52a (1)—**

In passing upon a motion for judgment of nonsuit in a criminal prosecution, the evidence must be considered in the light most favorable to the State, and the State is entitled to the benefit of every reasonable inference which may fairly be drawn from the evidence.

**2. Criminal Law § 52a (2)—**

If there is more than a scintilla of competent evidence to support the allegations in the warrant or bill of indictment, it is the court's duty to submit the case to the jury.

**3. Criminal Law § 8b—**

When two or more persons aid or abet each other in the commission of a crime, all being present, all are principals and equally guilty, without regard to any previous confederation or design.

**4. Same—**

While mere presence, even with the intention of abetting the commission of a crime, does not constitute aiding and abetting; if the person who is present communicates in any way to the perpetrator of the crime his intention of assisting, if necessary, or does some act to render aid or commands, advises, instigates or encourages the perpetrator of the crime, he is guilty as an aider or abettor.

**5. Conspiracy § 3—**

As a general rule, if two or more persons combine or conspire to commit a crime, each is liable *criminaliter* for everything done by his confederates in the execution of the common design, as one of its probable and natural consequences, even though what was done was not intended as a part of the original design or common plan.

**6. Homicide § 25—Evidence of defendant's guilt of murder in the second degree held sufficient for jury.**

The evidence tended to show that defendant and another were companions in immorality, that both were with the wife of deceased the night before and the night of his murder, that both had malice against deceased, and both had guns in the car, that defendant had stated about a week

before the murder that if "he didn't stop following him, he was going to fix him to stop," that on the night of the homicide defendant and his companion knew that deceased was following them, that defendant was driving, that his companion told him to stop the car and he would "fix" deceased, that defendant stopped the car in a manner so as to block the highway, and that his companion thereupon went to deceased's car, pointed a shotgun at deceased's chest and fired the fatal shot. *Held:* The evidence raises the reasonable inference that defendant and his companion were acting according to their prior concerted plan and design, and further that defendant aided his companion in the commission of the homicide, irrespective of any prior plan or design, and therefore, was sufficient to take the case to the jury on the charge of murder in the second degree.

APPEAL by defendant from *Paul, Special J.,* May-June Mixed Term 1955 of WAYNE.

Criminal prosecution on a bill of indictment charging murder in the first degree of Robert Robinson.

In a separate bill of indictment Joyce Hobbs was charged with the first degree murder of the same person.

Joyce Hobbs and the defendant pleaded Not Guilty, and the two cases were consolidated for trial. During the presentation of testimony by the State the defendant Hobbs entered a plea of guilty of murder in the second degree. The jury convicted the defendant Kelly of murder in the second degree.

From a judgment of imprisonment the defendant Kelly appeals, assigning error.

*William B. Rodman, Jr., Attorney General, and Claude L. Love, Assistant Attorney General, for the State.*

*John S. Peacock and Edmundson & Edmundson for Defendant, Appellant.*

PARKER, J. The defendant offered no evidence. The only assignment of error, except formal ones, is to the failure of the court to sustain the motion for judgment of nonsuit.

Robert Robinson, 27 years old, was a soldier stationed at Fort Bragg. He had been married about 4 years to Brookie Overton. They lived at Mt. Olive in the home of her mother and minor brothers.

After Robert Robinson's murder the defendant Kelly told John B. Edwards, a member of the State Bureau of Investigation assisting the sheriff in the investigation of the killing, that he had had sexual intercourse with Brookie Overton before her marriage, and had continued such relationship with her since her marriage to Robinson, spending nights with her in hotels and motels in Wilson and Goldsboro.

Since Brookie Overton's marriage, Kelly, in spite of the protests of her mother, continued to come to her home, in the absence of her husband, to take her off with him. About a month before Robinson's death Kelly came to the home for Brookie Overton, and when her mother said he shouldn't be going with Brookie, and shouldn't come to her home, and her brother asked him to leave, he offered to fight her brother.

Joyce Hobbs, who pleaded guilty to the charge of murdering Robert Robinson, and the defendant Kelly, were associates in taking women out in cars, and the irresistible inference from the evidence is that their purpose was immorality. About a week before Robinson's murder Adolphus Wall saw Joyce Hobbs and Kelly at his taxi stand in Mt. Olive. Wall saw two guns in the automobile Kelly was driving. In response to his question why they had the guns, one of them, he could not remember which, replied: "We have got them to kill damned men with."

Elizabeth Rivenbark, a sister of Brookie Robinson, saw Kelly come to her mother's house twice, and ask for Brookie Robinson. On one occasion she saw Kelly there shake his fist at Robinson. She testified: "Hobbs and Kelly had been toting guns around in the car for I had seen them there."

About a week before Robinson was killed, Florence Worrell heard Kelly say: "If he didn't stop following him, he was going to fix him to stop."

The night before Robinson's murder Joyce Hobbs, driving an automobile, passed a filling station where Robinson was, and said to Robinson: "Come on you S. O. B. we are going after Brookie." Kelly was not in the car. Robinson and his brother-in-law got in a car, and followed. Down the road Hobbs stopped, reached in the back of the car, got out a gun, pointed it at Robinson, and said: "Come on mother, we are ready for you." Kelly told Edwards, the S. B. I. Agent, that this same night Hobbs carried him and Brookie Robinson out in the country from Mt. Olive behind a church, and that Hobbs returned and picked them up. Hobbs left them there to go to town to pick up a girl.

On the night of the murder, and just before it occurred, Hobbs, Kelly and Brookie Robinson came in an automobile to Mrs. Betty Wilson's yard. Brookie Robinson got out to stay a few minutes. Kelly said to Hobbs: "You better get up, if you are going to keep that date with that girl in town." They left in the car. After Robinson's murder Kelly returned, picked up Brookie Robinson, and carried her to Mt. Olive.

About 7:00 or 7:30 p.m. on 5 October 1954, Bobbie Overton, a 20-year-old brother of Brookie Robinson, and William Starnes got in Robert Robinson's car. Robinson drove around a block in the Town of Mt. Olive three times, saw Joyce Hobbs' car, and started following it. Kelly

was driving the Hobbs' car, and in it were Joyce Hobbs and Eunice and Hazel Rivenbark. Kelly drove across the railroad track, came down the other side of the street, circled the block twice, and parked in front of Glenn Martin's Drug Store. The girls got out, went in the drug store, came back, and got in the car. Kelly drove off, and Robinson followed. Kelly stopped at a filling station for gas, and Robinson stopped across the street. Kelly drove off on the Goldsboro road, Robinson following. About a quarter of a mile down the road Kelly turned off on a side road, went about 100 feet, and stopped. Robinson stopped his car 25 or 30 feet behind. Starnes testified the hard surfaced part of the road was blocked by the Hobbs car, when its door opened for Hobbs to get out. Bobbie Overton testified: "I do mean to insinuate that the road was blocked." The road had narrow shoulders. Joyce Hobbs with a shotgun jumped out of his car, and ran back to the Robinson car. Robinson was under the steering wheel. Hobbs stuck the shotgun in the window of Robinson's car, saying: "G— d— it, you have been following me far enough." Robinson threw his arms up, and said: "Don't point that gun at me." The gun was pointed at Robinson's chest. Hobbs fired. The load of shot went into his left lung, his heart, and broke three ribs. Robinson died about five minutes after he was shot. Hobbs, after firing the gun, unbreached it, blew it out, and carried it back to his car.

Immediately after the murder Kelly told Lt. H. P. Davis, a police officer in Mt. Olive: "Hobbs had shot Robinson . . . While he was driving Hobbs told him to stop the car, and he would fix the S. O. B., and stop him from following him, referring to Robinson. . . When he stopped the car, Hobbs got the gun, jumped out, and ran back to the Robinson car, that he heard the gun shoot."

In passing upon a motion for judgment of nonsuit in a criminal prosecution, the evidence must be considered in the light most favorable to the State, and the State is entitled to the benefit of every reasonable inference which may fairly be drawn from the evidence. *S. v. Ritter*, 239 N.C. 89, 79 S.E. 2d 164. If there is more than a scintilla of competent evidence to support the allegations in the warrant or bill of indictment, it is the court's duty to submit the case to the jury. *S. v. Davenport*, 227 N.C. 475, 493, 42 S.E. 2d 686; *S. v. Rogers*, 227 N.C. 67, 40 S.E. 2d 472.

It is thoroughly established law in this State that, without regard to any previous confederation or design, when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty. *S. v. Spencer*, 239 N.C. 604, 80 S.E. 2d 670; *S. v. Gosnell*, 208 N.C. 401, 181 S.E. 323; *S. v. Donnell*, 202 N.C.

782, 164 S.E. 352; *S. v. Beal,* 199 N.C. 278, 154 S.E. 604; *S. v. Hart,* 186 N.C. 582, 120 S.E. 345; *S. v. Jarrell,* 141 N.C. 722, 53 S.E. 127.

"A person aids when, being present at the time and place, he does some act to render aid to the actual perpetration of the crime, though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or who either commands, advises, instigates or encourages another to commit a crime." *S. v. Johnson,* 220 N.C. 773, 18 S.E. 2d 358.  See *S. v. Holland,* 234 N.C. 354, 67 S.E. 2d 272; *S. v. Hart, supra.*

Mere presence, even with the intention of assisting, cannot be said to be aiding and abetting, unless the intention to assist, if necessary, was in some way communicated to the actual perpetrator of the crime.  *S. v. Ham,* 238 N.C. 94, 76 S.E. 2d 346; *S. v. Holland, supra; S. v. Johnson, supra.*

The general rule seems to be that if two or more persons combine or conspire to commit a crime, each is liable *criminaliter* for everything done by his confederates in the execution of the common design, as one of its probable and natural consequences, even though what was done was not intended as a part of the original design or common plan.  *S. v. Brooks,* 228 N.C. 68, 44 S.E. 2d 482; *S. v. Williams,* 216 N.C. 446, 5 S.E. 2d 314; *S. v. Lea,* 203 N.C. 13, 164 S.E. 737.

"Everyone who does enter into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others, in furtherance of such common design." *S. v. Jackson,* 82 N.C. 565.

There is evidence tending to show that Hobbs and Kelly were companions in immorality, and that both were with Robinson's wife the night before his murder, and the night of his murder.  There is evidence tending to show that both had malice against Robinson, that they had two guns in the car they used, and that one of them, with both present, said to Adolphus Wall, a week before Robinson's death, "we have got them" (the guns) "to kill damned men with," and that Kelly about a week before the murder said: "If he didn't stop following him, he was going to fix him to stop."  It seems to be a fair inference from this evidence that they had the guns in the car to kill Robinson, or any man, who interfered with their immorality: that such was their common design and plan.

The evidence, and the reasonable inference to be drawn therefrom, tends further to show that on the night of the homicide both Hobbs and Kelly knew that Robinson was following them, and that when Hobbs told Kelly "to stop the car and he would fix the S. O. B.," that Kelly stopped the car to permit Hobbs to kill Robinson according to their

prior concerted plan and design, and further, that such stopping of the car by Kelly under all the facts was aiding and abetting Hobbs in the homicide, irrespective of any prior plan or design. The evidence tends to show that the defendants acted in concert, and it is not material which fired the gun inflicting the mortal wound.

There is no doubt that Hobbs was guilty of murder in the second degree in the killing of Robinson. *S. v. Williams,* 235 N.C. 752, 71 S.E. 2d 138; *S. v. Burrage,* 223 N.C. 129, 25 S.E. 2d 393. In fact, there is strong evidence that he is guilty of first degree murder.

The words, "when lust hath conceived, it bringeth forth sin: and sin, when it is finished, bringeth forth death" (James, Ch. 1, v. 15), picture the tragedy here.

At the close of the State's evidence the solicitor for the State announced that the State would ask for a verdict of guilty of murder in the second degree. The demurrer to the evidence was properly overruled, because the evidence in the case, considered in the light most favorable to the State, is sufficient to carry the case to the jury on the charge of murder in the second degree.

No error.