STATE OF NORTH CAROLINA v. JAMES EARL LITTLE

No. 60

(Filed 14 April 1971)

**1. Homicide § 21—aiding and abetting homicide — sufficiency of evidence**

Issue of defendant's guilt of aiding and abetting the actual perpetrators of a homicide was properly submitted to the jury, where there was evidence tending to show that (1) on the evening of the homicide the defendant borrowed a shotgun which the perpetrators later used in the homicide, (2) the defendant drove the perpetrators to the scene of the homicide and waited in the car while they carried out the crime, and (3) the defendant drove off with the perpetrators after the homicide had been committed.

**2. Criminal Law § 2— proof of intent**

Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence; it must ordinarily be proven by facts and circumstances from which it may be inferred.

**3. Criminal Law § 89— admission of impeachment testimony — unresponsiveness of testimony**

Part of sheriff's answer which was not responsive to the question but which was competent for the purpose of impeachment, *held* admissible over the defendant's general objection to the answer.

**4. Criminal Law § 162— objection to evidence — evidence previously admitted without objection**

When evidence is admitted over objection but the same evidence was theretofore admitted without objection, the benefit of the objection is ordinarily lost.

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL by defendant from *Thornburg, S.J.,* at the September 21, 1970 Session of STANLY Superior Court.

On the night of 14 March 1970 a dance was being held at the Top Hat Cafe in Norwood, North Carolina, with about 125 people in attendance. Paul George Massey was in the band providing music for the dance. At approximately 11:30 p.m. Norman Watkins, the proprietor of the Top Hat, was standing about a foot to the right of the entrance to the dance hall when he saw Eugene "Snap" Watkins push the door open with the barrel of a shotgun. "Snap" Watkins withdrew the gun, the door closed, and then somebody shot into the door, blowing it open. The door again closed, was reopened, and Norman Watkins saw two shotgun barrels in the doorway. Both guns fired, killing Paul

George Massey. Charlie Barbers and Eugene "Snap" Watkins were tried for Massey's death and were convicted of manslaughter. Defendant Little, tried separately for aiding and abetting Barbers and Watkins, was convicted of manslaughter. From sentence imposed, Little appealed to the Court of Appeals. The case was transferred to the Supreme Court under its general order of 31 July 1970.

Norman Watkins; Donald Watkins, son of Norman Watkins; Alberta Davis; Jack Copley, an agent for the State Bureau of Investigation; and Ralph McSwain, sheriff of Stanly County testified for the State at defendant's trial. Their testimony is summarized as follows:

Norman Watkins testified that the defendant shot him three or four years prior to 14 March 1970, and that since then there had been "trouble or difficulty" between them; that about two months after defendant shot him the defendant returned to the Top Hat and was told to keep out, and about one month prior to the shooting of Massey the defendant entered the Top Hat with a gun but left; that he did not see the defendant on the evening in question, but that he did see Eugene "Snap" Watkins when the barrels of two shotguns were pushed through the door and fired into his establishment.

Donald Watkins testified that he saw the defendant drive an automobile into the Top Hat parking lot about 10 p.m. on 14 March 1970 and park about 50 feet from the door of his father's establishment. Eugene "Snap" Watkins and Charlie Barbers were in the car with defendant. All three got out, stood around for about 45 minutes, and then went to the back of defendant's car, opened the trunk, and Barbers and "Snap" Watkins lifted shotguns out of the trunk. Barbers and "Snap" Watkins then walked toward the Top Hat with the guns while defendant remained by the car. Barbers and "Snap" Watkins stepped inside the hallway, pushed the door open, and fired the shotguns into his father's dance hall. After three shots were fired, Barbers and "Snap" Watkins ran to defendant's car, got in, and defendant who was waiting under the wheel drove away.

Alberta Davis testified that on the night in question defendant came to her home between 11:00 and 11:30 and asked to borrow her brother's shotgun. She gave it to him and he left. This gun was identified as one of the guns used in the homicide.

Defendant testified in his own behalf. His testimony was to the effect that he had not conspired with "Snap" Watkins and Barbers to kill Massey; that although he did borrow a gun from Alberta Davis, he did so because he feared Norman Watkins; that he did go to the Top Hat on 14 March 1970 but did not take Barbers and "Snap" Watkins; that he did not permit and did not encourage anybody to take a loaded 12-gauge shotgun into the dance hall; that he did not open his trunk for Barbers and Watkins to get shotguns; that he did carry Barbers and "Snap" Watkins away from the scene of the crime, but only because they hopped into his car and asked him to drive them away; that before driving them away he asked both if they had shot anyone and they replied they had not.

Eugene "Snap" Watkins testified for the defendant that he did go with defendant to the Top Hat between 7 and 8 p.m. on the night of the murder; that he got out of defendant's car and defendant left; that later in the evening defendant returned to the Top Hat alone; that he and Barbers did shoot Massey, but that he did not get a gun from defendant nor did he and defendant plan any part of the crime; that the reason he got into the car with defendant after the shooting was that he saw him in the road and it looked like a good ride.

Charlie Barbers testified on behalf of the defendant that there were no prior arrangements made by "Snap" Watkins, defendant and himself to go to the dance hall with the shotguns; and that there were no arrangements made with defendant to wait until after the shooting in order to carry them away.

Jack Copley testified in rebuttal for the State that he talked to Barbers after the shooting occurred and that Barbers told him that the defendant had decided to go into the Top Hat Club with "Snap" Watkins, but Watkins told defendant to stay out by the car so he could drive "Snap" Watkins and Barbers away when they were ready to leave. Copley further testified that Barbers told him that defendant gave him the shotgun and told him that there were three shells in it.

Sheriff Ralph McSwain testified in rebuttal that he talked with Barbers and that Barbers told him that just before he and Watkins went into the Top Hat the defendant loaded one of the guns and said, "I won't leave you."

State v. Little

*Attorney General Robert Morgan and Assistant Attorney General I. Beverly Lake, Jr., for the State.*

*Ernest H. Morton, Jr., for defendant appellant.*

MOORE, Justice.

[1]  Defendant first assigns as error the court's denial of his motion for judgment as of nonsuit. Defendant contends the State failed to offer substantial evidence that defendant shared in the criminal intent of the actual perpetrators, and that this is one of the material elements needed to convict defendant for aiding and abetting.

[2]  Intent is an attitude or emotion of the mind, and is seldom, if ever, susceptible of proof by direct evidence. It must ordinarily be proven by facts and circumstances from which it may be inferred. *State v. Arnold,* 264 N.C. 348, 141 S.E. 2d 473; *State v. Gammons,* 260 N.C. 753, 133 S.E. 2d 649; *State v. Petry,* 226 N.C. 78, 36 S.E. 2d 653; 2 Strong's N. C. Index 2d, Criminal Law § 2.

Justice Ervin, in *State v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5, states:

"To constitute one a principal in the second degree, he must not only be actually or constructively present when the crime is committed, but he must aid or abet the actual perpetrator in its commission. *S. v. Epps,* 213 N.C. 709, 197 S.E. 580; *S. v. Davenport,* 156 N.C. 596, 72 S.E. 7; *S. v. Lumber Co.,* 153 N.C. 610, 69 S.E. 58. A person aids or abets in the commission of a crime within the meaning of this rule when he shares in the criminal intent of the actual perpetrator *(S. v. Oxendine,* 187 N.C. 658, 122 S.E. 568), and renders assistance or encouragement to him in the perpetration of the crime. *S. v. Hoffman,* 199 N.C. 328, 154 S.E. 314; *S. v. Baldwin,* 193 N.C. 566, 137 S.E. 590. While mere presence cannot constitute aiding and abetting in legal contemplation, a bystander does become a principal in the second degree by his presence at the time and place of a crime where he is present to the knowledge of the actual perpetrator for the purpose of assisting, if necessary, in the commission of the crime, and his presence and purpose do, in fact, encourage the actual perpetrator to commit the

crime. *S. v. Williams*, 225 N.C. 182, 33 S.E. 2d 880; *S. v. Johnson*, 220 N.C. 773, 18 S.E. 2d 358; *S. v. Hoffman, supra; S. v. Cloninger*, 149 N.C. 567, 63 S.E. 154; *S. v. Jarrell*, 141 N.C. 722, 53 S.E. 127, 8 Ann. Cas. 438; *S. v. Chastain*, 104 N.C. 900, 10 S.E. 519."

*Accord, State v. Swaney*, 277 N.C. 602, 178 S.E. 2d 399; *State v. Aycoth*, 272 N.C. 48, 157 S.E. 2d 655. *See also*, Note, 35 N.C.L. Rev. 285 (1956-57).

"In determining whether a person is guilty as a principal in the second degree, evidence of his relationship to the actual perpetrator, of motive tempting him to assist in the crime, his presence at the scene, and his conduct before and after the crime are circumstances to be considered." 2 Strong's N. C. Index 2d, Criminal Law § 9, p. 493; *State v. Birchfield, supra.*

[2] The State's evidence in the present case tends to show (1) defendant shot the proprietor of the Top Hat some four years before the night Massey was killed, and was later told by the proprietor not to return to the Top Hat; (2) about one month prior to the shooting in question the defendant entered this establishment with a gun but then left; (3) on the evening of the fatal shooting the defendant borrowed a shotgun which was later used in the shooting; (4) on this occasion the defendant, in company with the two principals, backed his automobile into the parking lot of the place where the shooting occurred; (5) the two principals and defendant were near defendant's car by themselves from the time the car was backed into the parking lot until the two principals walked into the building with the shotguns; (6) the defendant opened the trunk of his car and the two principals reached in and procured shotguns; (7) after removing the shotguns from the trunk of defendant's car, the principals entered the premises in question with the shotguns, while the defendant remained in the car; and (8) after the shooting the two principals ran from the building and got into defendant's car, where defendant was waiting under the wheel, and defendant then drove away.

Considering this evidence in the light most favorable to the State, as we must on a motion for judgment as of nonsuit, we hold there was ample evidence to go to the jury on the charge of aiding and abetting Barbers and Watkins in the shooting of Massey, and that the trial court correctly overruled

---

State v. Little

---

defendant's motion for judgment as of nonsuit. *State v. Swaney, supra; State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225; *State v. Davis,* 272 N.C. 469, 158 S.E. 2d 630; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44; *State v. Kelly,* 243 N.C. 177, 90 S.E. 2d 241; 2 Strong's N. C. Index 2d, Criminal Law § 104, p. 648.

[3] Defendant next assigns as error the court's failure to sustain his objection to certain testimony of Sheriff McSwain concerning a conversation the sheriff had with Charlie Barbers. Barbers testified for the defendant that he did not see defendant that night until defendant came to the Top Hat by himself, and that he and "Snap" Watkins had no arrangements with the defendant to go to the Top Hat or for the defendant to carry them away after the shooting. Sheriff McSwain on rebuttal was asked, "What, if anything, did you say to him [Barbers] prior to his making any statements, if he did?" Sheriff McSwain answered: "I told him that he had been brought back here for the James Honey Little trial and I wanted to discuss with him any activities that James Little had on the night of March 14. I told him that we only wanted him and Eugene to tell the truth about what happened. And Barbers told me that just before he and Snap went into the Top Hat Cafe that Honey Little loaded one of the guns and that he, Little, says, 'I won't leave you.' " Defendant objected. The objection was overruled. Defendant did not object to the question but objected to the answer. He did not move to strike the answer but now contends that the answer was not responsive to the question, and that the court erred in overruling his objection. This contention is without merit.

"In case of a specific question, objection should be made as soon as the question is asked and before the witness has time to answer. Sometimes, however, inadmissibility is not indicated by the question, but becomes apparent by some feature of the answer. In such cases the objection should be made as soon as the inadmissibility becomes known, and should be in the form of a motion to strike out the answer or the objectionable part of it." Stansbury, N. C. Evidence § 27 (2d Ed., 1963). *Accord, State v. Battle,* 267 N.C. 513, 148 S.E. 2d 599; *Huffman v. Lumber Co.,* 169 N.C. 259, 85 S.E. 148. Although part of Sheriff McSwain's answer was not responsive to the question, that part not responsive was competent for the purpose of impeaching Barbers. *State v. Butler,* 269 N.C. 483, 153 S.E. 2d 70; *State v. McPeak,* 243 N.C. 273, 90 S.E. 2d 505; *State v. Wellmon,* 222

N.C. 215, 22 S.E. 2d 437; Stansbury, N. C. Evidence § 46 (2d Ed., 1963) ; 2 Strong's N. C. Index 2d, Criminal Law § 89. If competent for the purpose of impeachment, the answer does not become incompetent because unresponsive to the question. "Whether the answers were responsive to' the questions is not controlling. The determinative question before the court below is whether the answers were relevant and competent. . . . If the answers furnished relevant facts, they were nonetheless admissible . . . [even though] they were not specifically asked for." *In re Will of Tatum,* 233 N.C. 723, 65 S.E. 2d 351. *Accord, State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225; *In re Will of Taylor,* 260 N.C. 232, 132 S.E. 2d 488.

[4]    Before Sheriff McSwain testified concerning Barbers' statement, Jack Copley also testified on rebuttal, without objection, to a conversation which he had with Barbers in which Barbers made substantially the same statements he made to Sheriff McSwain. "It is the well-established rule that when evidence is admitted over objection but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost. *Davis v. Vaughn,* 243 N.C. 486, 91 S.E. 2d 165; *Price v. Whisnant,* 232 N.C. 653, 62 S.E. 2d 56; *State v. Godwin,* 224 N.C. 846, 32 S.E. 2d 609; Stansbury's N. C. Evidence, 2d ed., § 30." *State v. Owens,* 277 N.C. 697, 178 S.E. 2d 442. *Accord, Dune's Club v. Insurance Co.,* 259 N.C. 294, 130 S.E. 2d 625.

For the reasons stated, the trial court properly overruled defendant's objection.

In the two assignments brought forward by the defendant, we find no error.

No error.

Justice LAKE did not participate in the consideration or decision of this case.