STATE v. ALONZO JOHNSON.

(Filed 23 January, 1942.)

**1. Criminal Law § 52b—**

Upon motion to nonsuit, the evidence must be considered in the light most favorable to the State and it is entitled to all reasonable inferences therefrom.

**2. Same—**

Upon motion to nonsuit, the province of the court is limited to determining whether there is any sufficient evidence to be submitted to the jury, the weight of the evidence being the exclusive province of the jury. C. S., 4643.

**3. Prostitution § 5c—**

Evidence tending to show that defendant accosted two soldiers, stated that he knew there were women in a near-by house, that the soldiers could go in if they wanted to, and that he "ought to have 50c for his trouble," with testimony of one of the soldiers that he went into the house designated and had sexual intercourse with a girl therein, *is held* sufficient to be submitted to the jury upon the question of defendant's guilt of aiding and abetting in prostitution and assignation.

**4. Prostitution § 5b—**

Testimony of a witness that she had seen defendant take men in his taxi out to a particular house, which the evidence showed was a bawdy house, *is held* competent as corroborative evidence in this prosecution for aiding and abetting in prostitution, the probative force of the evidence being for the jury.

**5. Criminal Law § 8b—**

A charge to the effect that a person cannot be convicted as an aider and abettor notwithstanding his presence and intention to aid, encourage or assist the actual perpetrator, unless such intention is in some manner communicated to the actual perpetrator, *is held* without error.

**6. Prostitution § 5a: Indictment and Warrant § 9—**

    A warrant alleging that defendant on a particular day in the designated county "did unlawfully, and willfully aid and abet in prostitution and assignation contrary to the form of the statute and against the peace and dignity of the State" follows the language of the statute, C. S., 4358 (7), and is sufficient to charge the offense therein proscribed.

**7. Indictment and Warrant § 17—**

    Where a warrant is sufficient in law to charge the offense, it is incumbent upon defendant, if he desires further information, to request a bill of particulars. N. C. Code, 4613.

WINBORNE, J., dissenting.

STACY, C. J., and BARNHILL, J., concur in dissent.

APPEAL by defendant from *Parker, J.,* and a jury, at August Criminal Term, 1941, of ROBESON. No error.

The criminal charge against defendant is set forth in the following warrant:

"Recorder's Warrant—No. 5715.

State of North Carolina

Robeson County—Recorder's Warrant.

Joseph A. Perry, being duly sworn, complains and says that at and in said County, Lumberton Township, on or about the 9th day of August, 1941, Alonzo Johnson did unlawfully and wilfully aid and abet in prostitution and assignation contrary to the form of the statute and against the peace and dignity of the State. Joseph A. Perry. Sworn to and subscribed before me this 9th day of August, 1941. Robert Weinstein, Solicitor." Defendant pleaded "Not guilty."

Defendant was tried on the above warrant and convicted in the recorder's court and found guilty. From the sentence imposed, he appealed to the Superior Court, where he pleaded "Not guilty." He was then tried by a jury and found guilty. The defendant made several exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*L. J. Britt, T. A. McNeill, and Caswell P. Britt for defendant.*

CLARKSON, J. At the close of the State's evidence and at the conclusion of all the evidence, the defendant in the court below made motions for judgment of nonsuit. N. C. Code, 1939 (Michie), sec. 4643. The court overruled these motions and in this we can see no error.

In *S. v. Mann,* 219 N. C., 212 (214), is the following: " 'In considering a motion to dismiss the action under the statute, we are merely to

ascertain whether there is any evidence to sustain the indictment; and in deciding the question we must not forget that the State is entitled to the most favorable interpretation of the circumstances and of all inference that may fairly be drawn from them. *S. v. Carlson,* 171 N. C., 818; *S. v. Rountree,* 181 N. C., 535. It is not the province of this Court to weigh the testimony and determine what the verdict should have been, but only to say whether there was any evidence for the jury to consider; if there was, the jury alone could determine its weight. *S. v. Cooke,* 176 N. C., 731.' *S. v. Carr,* 196 N. C., 129, 144 S. E., 698."

The evidence on the part of the State is to the effect that two soldiers stationed at Fort Bragg, on 9 August, arrived at Lumberton from Fort Bragg about 8:00 o'clock p.m. About 12:00 or 1:00 o'clock they were parked across the street from the Airport Service Station. Sergeant Joseph A. Perry, one of the soldiers, testified, in part: "There was a house over there, I didn't know what house it was, we just turned around there; we were turning around to come back to Lumberton. I had never been to that house before. When we were in front of the house across the road from the airport station we saw Johnson. This airport station is on the Charlotte Road. Johnson was in his car. He came around to us and asked if we were M. P.'s (Military Police) and we told him No; he said if we wanted some women he would take us to Dreamland, and we told him we were not interested. He said 'Wait a minute,' and he went into a house about 30 feet from where we were turning around and knocked on the door, and he talked to someone. I couldn't tell whether it was a man or a woman. He came back out. He said, 'There are some women in there, you can go in there if you want to; you ought to give me 50c for my trouble.' Neither of us soldiers got out of our car then and went in the house, about five minutes later. About five minutes later John Doyle went in the house. After Johnson had this conversation with us he went back to his car. . . . I had never seen Johnson before that night. I don't know where Dreamland Service Station is, never heard of it. I do not know anything else about it."

John T. Doyle, the other soldier, testified, in part: "We went back to that same house Johnson had gone in and stopped, and I went in the house; there were girls in there; I only saw one, I guess she was an Indian girl. When I got in there I talked with her; I went to bed with her and had sexual intercourse with her; I paid the girl. That was the same house Johnson had told us we could go in. Perry was in his car while I was in the house having sexual intercourse with this girl."

Rebecca Jacobs testified, in part: "Q. State whether or not you have ever seen Johnson in his taxi carry any men out to that house? Ans.: I saw him sometimes, a few times, couple of times."

We think this evidence of Rebecca Jacobs competent to corroborate Doyle; the probative force was for the jury.

The defendant denied the charge and proved a good reputation; the probative force of the evidence was for the jury to decide.

There were no exceptions to the charge of the court, it was clear and able, covering the law applicable to the facts. The court charged, in part: "In order for one to aid and abet the commission of a crime, he must do something that will indicate, encourage or assist the actual perpetrator in its commission. Mere presence, even with the intention of assisting, cannot be said to have incited, encouraged or aided the perpetrator unless the intention to assist was in some way communicated to him. A person aids when, being present at the time and place, he does some act to render aid to the actual perpetration of the crime, though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or who either commands, advises, instigates or encourages another to commit a crime. A person who, by being present, by word or conduct, incites another to commit a criminal act or one who so far participates in the commission of the offense as to be present to the knowledge of the person actually committing the crime for the purpose of assisting, if necessary." *S. v. Hoffman,* 199 N. C., 328 (333).

In 2 C. J., p. 1024, Aider and Abettor is defined as follows: "One who advises, counsels, procures, or encourages another to commit a crime, whether personally present or not at the time and place of the commission of the offense; any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances and approves the same." *S. v. Hart,* 186 N. C., 582; *S. v. Dail,* 191 N. C., 234; *S. v. Tyndall,* 192 N. C., 559; *S. v. Baldwin,* 193 N. C., 566.

The statute, N. C. Code, *supra,* sec. 4357, reads: "The term 'prostitution' shall be construed to include the offering or receiving of the body for sexual intercourse for hire, and shall also be construed to include the offering or receiving of the body for indiscriminate sexual intercourse without hire. The term 'assignation' shall be construed to include the making of any appointment or engagement for prostitution or any act in furtherance of such appointment or engagement."

Section 4358: "It shall be unlawful: (7) To engage in prostitution or assignation, or to aid or abet prostitution or assignation by any means whatsoever."

The warrant was drawn in the language of the statute and is sufficient in law. *S. v. Slanton,* 23 N. C., 424; *S. v. Crews,* 128 N. C., 581; *S. v. Leeper,* 146 N. C., 655; *S. v. Carpenter,* 173 N. C., 767; *S. v. Maslin,* 195 N. C., 537.

In *S. v. Abbott,* 218 N. C., 470 (476), speaking to the subject, it is written: "In *S. v. George,* 93 N. C., 567 (570), *Ashe, J.,* for the Court, said: 'The indictment strictly follows the words of the statute, and that

is laid down in all the authorities as the true and safe rule. It is true there are some few exceptions, but we do not think they embrace this case.' *S. v. Leeper, supra; S. v. Puckett,* 211 N. C., 66 (73)."

"If the defendants desired further information, the statute provides that they could have a bill of particulars. Revisal, sec. 3244 (N. C. Code, 1939 [Michie], sec. 4613). *S. v. Pickett,* 118 N. C., 1233." *S. v. Leeper, supra,* at p. 661.

In *S. v. Puckett, supra,* we find: "In *S. v. Wilson,* 121 N. C., 650 (655), it is said: 'Besides, duplicity is ground only for a motion to quash. Being cured by the verdict, it cannot be used as ground for a motion in arrest of judgment. Whar. Cr. P. L. and Pr., secs. 255, 760.' 16 C. J., p. 1258, sec. 2791."

The sufficiency of a warrant for aiding and abetting prostitution, using the language employed in the warrant in the instant case, has been decided in the case of *S. v. Waggoner,* 207 N. C., 306, and adversely to the defendant. One of the counts in the warrant on which the defendant was convicted in that case charged that he "did aid and abet in prostitution and assignation, against the statute in such case made and provided, and against the peace and dignity of the State." This language is almost identical with that contained in the warrant in the instant case. There was a motion below to quash the warrant, which was overruled. The Supreme Court found no error, and it is stated at p. 307, that: "The warrant was drafted in accordance with the provisions of C. S., 4358."

None of defendant's exceptions and assignments of error can be sustained, for the reasons given. The General Assembly has made aiding and abetting in prostitution a crime. The defendant has had a fair and impartial trial and has been convicted by a jury of his country. In law we find

No error.

WINBORNE, J., dissenting: The Constitution of North Carolina declares that in all criminal prosecutions every man has the right to be informed of the accusation against him, and that no person shall be put to answer any charge except by indictment, presentment, or impeachment. Art. I, sections 11 and 12. An accused has the right to be informed of the specific accusation against him, and to be tried accordingly. Hence, the motion in arrest of judgment, aptly made by defendant, but not referred to in the majority opinion, is meritorious, in my opinion, and should be allowed for that the warrant is fatally defective. "The indictment should set forth the facts constituting the aiding and abetting." Joyce on Indictments, 2d Ed., page 392, section 356. The warrant here merely charges that defendant did "aid and abet in prosti-

tution and assignation." It fails to state *wherein* defendant aided and abetted. Without a description of the acts constituting the aiding and abetting, the warrant is defective. For example, larceny is a crime, but no one would contend that a bill charging larceny, without a description of the thing stolen, would be good.

Let us then see the situation in hand. It is noted that the Legislature, in the act "for the repression of prostitution," Public Laws 1919, ch. 215, now C. S., 4357, *et seq.*, has undertaken in six paragraphs to minutely define numerous acts as substantive offenses, in the main—specific acts pertaining to aiding and abetting prostitution or assignation. And then it sets forth the all-inclusive section, which reads: "7. To engage in prostitution or assignation, or to aid or abet prostitution or assignation by any means whatsoever." It is especially noted that this section does not merely say "to aid or abet prostitution or assignation," as charged in the warrant, but there are added the descriptive words "by any means whatsoever," thereby covering a multitude of acts. Thus, by proper construction, it is manifest that the Legislature intended that these super-added words should be given a meaning, and catch all other acts of aiding and abetting prostitution or assignation.

Such general clause, following the particular and specific clauses, must be confined to things of the same kind. Levi's Southerlands Statutory Construction, Vol. 2, 2d Ed., sec. 422 (268), p. 814. Therefore, in order to determine whether any offense be committed, it is essential that for the words of the statute "by any means whatsoever" to be given force and effect, there must be stated in the warrant the acts and circumstances of the particular charge, so that the court can see as a matter of law that a crime is charged, *S. v. Phelps,* 65 N. C., 450; *S. v. Finch,* 218 N. C., 511; 11 S. E. (2d), 547, and the defendant be apprised of the particular offense charged against him, a right guaranteed to him by the Constitution of North Carolina, Art. I, secs. 11 and 12.

If the warrant had been drawn to cover an offense falling within one of the sections of the statute defining substantive offenses, decisions of this Court would require that the charge in the warrant should describe the offense in the language of the statute. Otherwise, the warrant would be defective. Should, then, there be no description where an alleged aider and abettor be charged? Manifestly, the Legislature, in using the words "by any means whatsoever," did not so intend.

But it is asserted in the majority opinion that this question has been decided in *S. v. Waggoner,* 207 N. C., 306, 176 S. E., 566, contrary to contention of defendant. However, an examination of the record shows that, while it is true that the third count in the warrant there is the same as that here, each of the first two counts described offenses within the statutory descriptions of substantive offenses. Therefore, the war-

rant was not subject to motion to quash. And there was conviction on the second count. Hence, motion in arrest of judgment was not in order. Thus, the question here is not settled there.

Furthermore, the challenge to the warrant is not answered by simply saying that the "warrant was drawn in the language of the statute and is sufficient in law." While it is a general rule prevailing in this and other jurisdictions that an indictment for a statutory offense is sufficient if the offense be charged in the words of the statute, *S. v. Jackson,* 218 N. C., 373, 11 S. E. (2d), 149, the rule is without application where the words of the statute do not in themselves inform the accused of the specific offense of which he is accused so as to enable him to prepare his defense or plead his conviction or acquittal as a bar to further prosecution for the same offense, as where the statute characterizes the offense in mere general or generic terms, or does not sufficiently define the crime or set forth all of its essential elements. In such situation the statutory words must be supplemented by other allegations which so plainly, intelligibly and explicitly set forth every essential element of the offense as to leave no doubt in the mind of the accused and the court as to the offense intended to be charged. 27 Am. Jur., 662; Ind. and Inf., sec. 103; 50 C. J., 810—Prostitution, 25; *S. v. Liles,* 78 N. C., 496; *S. v. Bragg,* 86 N. C., 687; *S. v. Deal,* 92 N. C., 802; *S. v. Watkins,* 101 N. C., 702, 8 S. E., 346; *S. v. Whedbee,* 152 N. C., 770, 67 S. E., 60; *S. v. Ballangee,* 191 N. C., 700, 132 S. E., 795; *S. v. Watkins,* 200 N. C., 692, 158 S. E., 393; *S. v. Cole,* 202 N. C., 592, 163 S. E., 594; *U. S. v. Cruikshank,* 92 U. S., 542, 23 L. Ed., 588, 2 Otto. (S. Ct.), 542; *U. S. v. Simmons,* 96 U. S., 360, 24 L. Ed., 819; *U. S. v. Carll,* 105 U. S., 661; *U. S. v. Hess,* 124 U. S., 483, 31 L. Ed., 516, 8 S. Ct., 571; *Evans v. U. S.,* 153 U. S., 584, 38 L. Ed., 830, 14 S Ct., 934; *Keck v. U. S.,* 172 U. S., 434, 43 L. Ed., 505, 19 S. Ct., 254; *Armour Packing Co. v. U. S.,* 209 U. S., 56, 52 L. Ed., 681, 28 S. Ct., 428

In 50 C. J., 810, Prostitution, sec. 25, speaking of prosecutions under that subject, it is stated: "As in other criminal prosecutions the indictment must state the offense with sufficient definiteness and certainty as fully to apprise accused of the charge against him. While it is ordinarily sufficient to charge a statutory offense in the language of the statute, this rule is subject to the qualification that, where a more particular statement of facts is necessary to charge the offense with such certainty, as will apprise the accused of the offense imputed to him, it must be made; and where the statute denounces the offense in generic terms, the indictment must go further in stating the offense than by merely using the language of the statute, and state the acts or facts falling within the general terms on which it is intended to rely for conviction."

This Court, in *S. v. Watkins,* 101 N. C., 702, 8 S. E., 346, in opinion by *Merrimon, J.,* uses this language : "It is sufficient and proper, ordinarily, to charge statutory offenses in the words, or substantially the words, of the statute creating them, and especially is this so when the statute defines the offenses in words that have a technical or precise meaning, such as in themselves imply the offense, or the character and quality of the act or acts, or things that constitute it, or an essential part or essential parts of it. . . . This is so because the court can in such cases see and determine that an offense is charged in the indictment, and the accused will have such information in respect to it as will enable him to understand it, and make preparation for his defense, and as will enable him to plead former acquittal or conviction in case of subsequent prosecution. . . . It is otherwise, however, when the words of the statute are not precise, but are uncertain or indefinite in their meaning, implying a multiplicity and variety of acts or things which may or may not constitute the offense in whole or in part. In such cases it is necessary to charge the facts that give specific character and significance to the acts charged to have been done, and as designated, with reasonable certainty in the statute cited, . . . in order that the court may see that the offense is charged and the accused may prepare for his defense . . . The act should be so specified and charged as to show that they mean what the statute intends . . . The court must see that the offense is charged, and it and not the pleader must determine that the acts done constitute the offense denounced by the statute. . . ."

And in *S. v. Cole, supra,* the Court, speaking through *Adams, J.,* states : "As a rule it is enough to charge a statutory offense in the words of the statute. But this is not always true. It is sometimes necessary not only to pursue the technical language of the statute but to set forth the facts and circumstances which go to make up the offense. . . . In all criminal prosecutions every man has the right to be informed of the accusation against him ; and the accusation must be definite. . . . 'Every indictment is a compound of law and fact and must be so drawn that the court can, upon its inspection, be able to see the alleged crime,' *S. v. Hathcock,* 29 N. C., 52. This is essential to a valid judgment. In explanation of the principle, *Ruffin, C. J.,* used this significant language in *S. v. Stanton,* 23 N. C., 424, 'Thus a statute may be so inaccurately penned that its language does not express the whole meaning the Legislature had ; and by construction its sense is extended beyond its words. In such a case the indictment must contain such averments of other facts, not expressly mentioned in the statute, as will bring the case within the true meaning of the statute ; that is, the indictment must contain such words as ought to have been used in the statute if the Legislature had correctly expressed therein their precise meaning. In

*S. v. Johnson,* 12 N. C., 360, for example, it was held that, besides charging in the words of the act that the prisoner, being on board the vessel, concealed a slave therein, the indictment should have charged a connection between the prisoner and the vessel as that he was a mariner belonging to her; because that 'was the true construction of the act. So, where a statute uses a generic term, it may be necessary to state in the indictment the particular species in connection with which the crime was charged.' " And, after stating that similarly the principle was applied in *S. v. Farmer,* 104 N. C., 887, 10 S. E., 563, *Adams, J.,* continues, "These decisions exemplify the rule that an indictment may follow the language of the statute when the statute defines the offense and contains all that is essential to constitute the crime and to inform the accused of its nature; but if a particular clause in a statute does not set forth all the essential elements of the specified act intended to be punished, such elements must be charged in the bill," citing authorities.

The Supreme Court of the United States, in *U. S. v. Simmons, supra,* uses this language: "Where the offense is purely statutory . . . it is 'as a general rule sufficient in the indictment to charge the defendant with acts coming fully within statutory description, in the substantial words of the statute, without any further expansion of the matter' . . . But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to the subsequent prosecution for the same offense. An indictment not so framed is defective, although it may follow the language of the statute."

And, further, in *U. S. v. Hess, supra,* following the Cruikshank, Simmons, and similar cases, these headnotes epitomize the decisions of the Court: "(1) In an indictment all material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective . . . (3) The language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged. (4) Such particulars are matters of substance and not of form, and their omission is not aided or cured by the verdict."

Furthermore, even though under the statute, C. S., 4623, a warrant or indictment shall be deemed sufficient in form if it express the charge against defendant in a plain, intelligible and explicit manner, and it is not to be held defective by reason of any informality or refinement if the matter appearing therein be sufficient to enable the court to proceed to

judgment, this Court, in the case of *S. v. Ballangee, supra,* after referring to opinions in *S. v. Moses,* 13 N. C., 452, and *S. v. Gallimore,* 24 N. C., 372, stated: "In each of these cases it was said in substance that the statute does not supply the omission of a distinct averment of any fact or circumstance which is an essential constituent of the offense charged. Every crime consists of acts done or omitted, and it is not sufficient to charge a defendant generally with the commission of a particular offense (unless the form of the indictment is prescribed by statute), but all the essential facts and circumstances must be set forth," citing cases.

Moreover, defect in a warrant or bill of indictment is not cured by the statute which enables the defendant to call for a bill of particulars. C. S., 4613. This section applies only when further information not required to be set out in the indictment is desirable. The "particulars" authorized are not a part of the indictment. Request for bill of particulars is addressed to discretion of the court. A bill of particulars therefore will not supply any matter which the indictment must contain. *S. v. Long,* 143 N. C., 670, 57 S. E., 349; *S. v. Deal, supra; S. v. Cole, supra.*

For these reasons my vote is for reversal of ruling below on motion in arrest of judgment.

STACY, C. J., and BARNHILL, J., concur in dissent.