STATE OF NORTH CAROLINA v. LARRY EUGENE CASSELL

No. 7418SC878

(Filed 5 March 1975)

1. Homicide § 21— second degree murder — aider and abettor

    The State's evidence was sufficient for submission to the jury on the issue of defendant's guilt of second degree murder as an aider

and abettor where it tended to show that defendant and the actual perpetrator argued with deceased in a bar, defendant and the perpetrator obtained shotguns from defendant's car, defendant threatened to "blow the door down" when the bartender prevented them from re-entering the bar with the shotguns, defendant threatened to kill deceased if he followed defendant and the perpetrator from the lounge, deceased followed them in a car when they left the lounge, defendant was driving and the perpetrator reached across in front of defendant with a shotgun and fired into the car operated by deceased, and defendant fled from the scene of the crime.

2. **Criminal Law § 9— trial for aiding and abetting second degree murder — manslaughter guilty plea by perpetrator**

Defendant could properly be tried for second degree murder as an aider and abettor although the State had previously allowed the actual perpetrator to plead guilty to voluntary manslaughter.

3. **Criminal Law §§ 9, 113— aiding and abetting — statement to victim — communication to perpetrator — manner of driving car**

In a prosecution of defendant for second degree murder as an aider and abettor, the trial court did not err in instructing the jury that it could convict defendant if it found that defendant was present and knowingly aided the perpetrator by telling deceased that if he followed them they would kill him without also instructing the jury that the State must prove defendant's statement was communicated to the perpetrator where the evidence showed that defendant and the perpetrator were together when defendant made the statement to the deceased; nor did the court err in instructing the jury that it could convict defendant if it found defendant was present and aided and abetted the perpetrator by driving his automobile in such a manner as to permit the perpetrator to fire the fatal shot.

4. **Criminal Law § 78— stipulation as to cause of death — relevancy of medical testimony and X-rays**

Stipulation that decedent died as a result of a gunshot wound inflicted by a third person did not render irrelevant a physician's testimony as to the injuries sustained by decedent and the treatment of those injuries and X-rays showing shotgun pellets in decedent's head where the State contended defendant aided and abetted in the commission of the crime by driving his automobile in such manner as to permit the actual perpetrator to shoot decedent while decedent was operating an automobile, since evidence of the nature and location of the wounds would aid the jury in determining the relative positions of the two automobiles at the time the fatal shot was fired and would not serve only to inflame the jury.

APPEAL by defendant from *Long, Judge.* Judgment entered 16 May 1974 in Superior Court, GUILFORD County. Heard in the Court of Appeals 15 January 1975.

This is a criminal prosecution wherein the defendant, Larry Eugene Cassell, was charged in a bill of indictment, proper in

form, with first degree murder. Immediately prior to arraignment, however, the State announced that it would not prosecute the defendant for first degree murder but that it had elected to prosecute him for "the lesser included offense of murder in the second degree, and for such other lesser included offenses as the evidence may show."

Defendant entered a plea of not guilty and the State offered evidence tending to show the following. At about 6:00 p.m. on 1 November 1973, the deceased, Bruce Garner, accompanied by several friends, went to the Flamingo Bar and Grill on Summit Avenue in Greensboro to drink beer. The defendant and a friend, Jimmy Dale Hundley, were at the Flamingo when Garner and his friends arrived. Sometime thereafter, Garner accused Hundley and the defendant of staring at him. A short conversation ensued, after which the defendant and Hundley walked out of the Flamingo, crossed the street, and obtained two shotguns from the defendant's car. With the defendant in the lead, the two men returned to the bar and grill. When the bartender prevented them from going inside, the defendant said: "Listen I don't have a beef with you but I do with a boy inside. If you don't move, I'm going to blow the door down." The bartender nevertheless refused to allow the defendant and Hundley to enter the Flamingo with the shotguns. At this point the defendant told Garner, who was standing inside the door: "If you follow me, I'm going to kill you." Defendant and Hundley returned to their car and, with the defendant driving, headed north on Summit Avenue. Immediately thereafter, Garner borrowed a friend's car and drove away in the same direction.

Officer J. D. Shelton, Jr., of the Greensboro Police Department, testified that shortly after 9:30 p.m. he received a call to investigate an accident on Summit Avenue. When he arrived at the scene, he discovered that a 1965 Thunderbird had wrecked in the front yard of the Proximity School. He observed a hole "approximately the size of a silver dollar" in the front window on the passenger side of the car and extensive injury to the face of the driver, who he later learned was Bruce Garner.

Defendant stipulated that Bruce Garner died from a shotgun blast to the face inflicted by Jimmy Dale Hundley while a passenger in the defendant's car and did not object to the introduction into evidence of a statement made by the defendant on 2 November 1973.

R. C. Booth of the Greensboro Police Department, who took the defendant's statement, testified that the defendant was advised of his constitutional rights and that the defendant signed a "Waiver of Rights" form.

The defendant told Booth that on the previous evening Hundley and another man, who was a stranger to him, became involved in an argument at the Flamingo Bar and Grill. When the defendant and Hundley decided to leave, this same person, along with approximately four other males, followed them outside of the Flamingo and "hollered something to them". The defendant and Hundley each took a shotgun from the defendant's car and told the group that they did not want any trouble.

Booth further testified as follows:

"He [the defendant] said they got in the car and that he put the automatic shotgun on the back seat and folded the back part of the seat down; said that Jimmy laid his gun in the front seat, and they started the car up and hit Summit Avenue, headed north out of town. He said along about the Northeast Shopping Center we noticed this T-Bird right up on our bumper and said that they kept on going, and that the T-Bird started weaving in and out. He said that that went on from the Northeast Shopping Center all the way up to Proximity School. He said that he motioned for him—the guy in the T-Bird to go on two or three times. He said that he hollered and told him to go on. He said that he was on the outside lane and the guy in the T-Bird was on the inside lane. He said at that point Jimmy pointed the gun out my window across in front of me and shot; said after he shot, I kept going. The T-Bird went to the left, crossed the other side of the road onto the Proximity School yard. He said that he went on home to Joyce Street . . . . "

Booth also testified that Proximity School is approximately four or five blocks from the Northeast Shopping Center and that Summit Avenue is a two lane road.

Defendant did not testify or offer any evidence. The jury found the defendant guilty of second degree murder, and the court sentenced him to a prison term of not less than eight (8) nor more than fifteen (15) years. Defendant appealed.

*Attorney General Edmisten by Asst. Attorney General Walter E. Ricks III and Assoc. Attorney Robert W. Kaylor for the State.*

*Smith, Carrington, Patterson, Follin & Curtis by Kenneth M. Carrington and Michael K. Curtis for defendant appellant.*

HEDRICK, Judge.

Defendant assigns as error the failure of the trial judge to grant his motion for judgment as of nonsuit.

In the case at bar, defendant was prosecuted on the theory that he aided and abetted Jimmy Dale Hundley in the commission of second degree murder. An aider and abettor is one who advises, procures, encourages, or assists another in the commission of a crime. *State v. Beach,* 283 N.C. 261, 196 S.E. 2d 214 (1973).

> " 'A person aids when, being present at the time and place, he does some act to render aid to the actual perpetrator of the crime though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or either commands, advises, instigates or encourages another to commit a crime.' *State v. Holland,* 234 N.C. 354, 358, 67 S.E. 2d 272; *State v. Johnson,* 220 N.C. 773, 776, 18 S.E. 2d 358. ' . . . Mere presence, even with the intention of assisting in the commission of a crime cannot be said to have incited, encouraged or aided the perpetration thereof, unless the intention to assist was in some way communicated to him (the perpetrator) . . . . ' *State v. Hoffman,* 199 N.C. 328, 333, 154 S.E. 314. However, there is an exception. ' . . . when the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement, and in contemplation of law this was aiding and abetting.' *State v. Holland, supra.*" *State v. Hargett,* 255 N.C. 412, 415, 121 S.E. 2d 589, 592 (1961).

Circumstances to be considered in determining whether a defendant aided and abetted the actual perpetrator of a crime include the following: (1) the relationship of the defendant to the actual perpetrator; (2) the motive tempting the defendant to assist in the crime; (3) presence of the defendant at the time

and place of the crime; and (4) conduct of the defendant both before and after commission of the crime. *State v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5 (1952).

[1]   In the instant case, the State offered evidence tending to show (1) that the defendant and Hundley were friends; (2) that the defendant was angry with the deceased; (3) that the defendant and Hundley obtained two shotguns from the defendant's car; (4) that the defendant threatened to "blow the door down" when the bartender prevented them from entering the Flamingo Bar and Grill with the shotguns; (5) that the defendant threatened to kill the deceased if he followed them; (6) that when he and Jimmy Dale Hundley left the Flamingo, Hundley put his shotgun in the front seat of the car; (7) that the defendant was driving the car from which Hundley shot the deceased; (8) that Hundley fired the shotgun from out of the defendant's window; and (9) that the defendant left the scene of the crime. We conclude that when taken in the light most favorable to the State, there was sufficient evidence to allow the jury to find that the defendant aided and abetted Hundley in the commission of second degree murder.

[2]   Defendant next contends that the trial court erred in placing him on trial for second degree murder because Jimmy Dale Hundley, the actual perpetrator of the crime, had previously pleaded guilty to voluntary manslaughter.

One who aids and abets in the commission of a felony is a principal in the second degree and is equally liable with the actual perpetrator of the crime. *State v. Price,* 280 N.C. 154, 184 S.E. 2d 866 (1971).

"It is not necessary that the person who actually perpetrated the deed be tried and convicted before the one who aided and abetted in the crime can be tried and convicted. *State v. Jarrell,* 141 N.C. 722, 53 S.E. 127. Indeed, this Court has held that where one principal has been acquitted at a former trial it was no bar to the trial of the others who were indicted as principals. *State v. Whitt,* 113 N.C. 716, 18 S.E. 715. See Annot., 24 A.L.R. 603; 21 Am. Jur. 2d Criminal Law § 101. Obviously there must be proof that the offense has in fact been committed before one may be convicted of aiding and abetting in its commission. *Cf. State v. Gainey,* 273 N.C. 620, 160 S.E. 2d 685; *State v. Spruill,* 214 N.C. 123, 198 S.E. 611." *State v. Beach, supra* at 269.

Although the State allowed Hundley to plead guilty to voluntary manslaughter prior to defendant's trial, Hundley's guilty plea did not, as contended by the defendant, determine that the crime of second degree murder had not been committed. This assignment of error is, therefore, overruled.

[3]   Based on exceptions duly noted in the record, the defendant contends the court erred in instructing the jury that it could convict the defendant if it found beyond a reasonable doubt that the defendant was present when Hundley committed the crime and that the defendant knowingly encouraged and aided Jimmy Hundley by telling the deceased if he followed them they would kill him or by driving the car in such a way as to permit the shooting.

Defendant argues that where the State relies on words of encouragement as a basis for the jury's finding that the defendant aided and abetted in the perpetration of the crime, the State must prove not only that the words were uttered but that they were actually communicated to the perpetrator. Ordinarily, where the State relies on words of encouragement or incitement to show that the defendant aided and abetted the actual perpetrator of the crime, the State must also prove that the words were communicated to the perpetrator, 22 C.J.S. Criminal Law, § 88(2) ; but in the present case, the State was not relying solely on the defendant's statement to the deceased that if he followed them he would be killed. This statement was merely one incident in a series of events linking the defendant and Hundley to the commission of the crime.

The evidence discloses that Hundley had been present all evening and left the Flamingo with the defendant and that each man got a shotgun and returned to the bar and were together when the defendant made the statement to the deceased. Under the circumstances, it was not necessary for the State to prove that the statement made by the defendant to the deceased was communicated to Hundley. Nor do we find any error in the court's instructing the jury that it could convict the defendant if it found beyond a reasonable doubt that the defendant was present when Hundley committed the crime and aided and abetted him by driving the automobile in such a manner as to permit the shooting. Driving the automobile in such a manner as to permit Hundley to fire the fatal shot was simply the final incident in the series of events linking the defendant and Hundley to the crime. When the charge is considered contextually as

a whole, we think it is fair, complete and free from prejudicial error.

[4] By assignment of error number six, defendant next contends that the trial court committed prejudicial error in allowing Dr. Phillips, after the defendant had stipulated that Garner died as a result of a gunshot wound inflicted by Hundley, to testify as to the injuries sustained by Garner and the treatment he gave for these injuries and in allowing into evidence an X-ray photograph showing shotgun pellets in the deceased's head. Citing *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969) and *State v. Wall*, 243 N.C. 238, 90 S.E. 2d 383 (1955), defendant argues that this evidence was rendered irrelevant by the stipulation and had no probative value with respect to any issue to be determined by the jury and that its admission was prejudicial because it served only to inflame the jury and incite prejudice against the defendant. Relevant evidence will not be excluded simply because it may tend to prejudice the jury or excite its sympathy; however, if the only effect of the evidence is to excite prejudice or sympathy, its admission may be ground for a new trial. *State v. Wall, supra.*

Under the circumstances of this case, we cannot say that the evidence challenged by these exceptions was irrelevant and that its only effect or purpose was to inflame the jury against the defendant. Here, the State not only had the burden of proving that Garner died as a result of gunshot wounds inflicted by Hundley, it had to introduce evidence from which the jury could find beyond a reasonable doubt that the defendant aided and abetted Hundley in the commission of the crime; and, in order to do so, the State had to offer evidence that the defendant drove the automobile in such a manner as to permit Hundley to fire the fatal shot. The nature and extent of the wounds, and their precise location on Garner's body, would be of considerable aid to the jury in determining the relative position of the two automobiles when the fatal shot was fired. This in turn would assist the jury in deciding whether the defendant aided and abetted Hundley by driving the automobile in such a manner as to permit him to reach across in front of the defendant with his shotgun and fire with deadly accuracy into the automobile operated by Garner. While the stipulation relieved the State of the burden of proving the cause of Garner's death, it did not, in our opinion, render irrelevant any evidence which tended to shed any light on the defendant's connection with that death.

In any event, it is our opinion that the defendant has failed to show that he was prejudiced by the admission of the physician's testimony, since Officer Shelton testified without objection immediately before Dr. Phillips in considerable detail as to the injuries sustained by Garner. This assignment of error is not sustained.

Defendant has other assignments of error which we have carefully considered and find to be without merit. We find that the defendant had a fair trial free from prejudicial error.

No error.

Judges MORRIS and PARKER concur.