State v. Spencer

---

STATE OF NORTH CAROLINA v. LESLEY SPENCER

No. 752SC435

(Filed 5 November 1975)

1. **Homicide § 21— aiding and abetting manslaughter — sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant's brother was guilty of manslaughter and that defendant aided or abetted him in that unlawful killing where it tended to show

that the victim lost his gun during a struggle with defendant's brother, the brother picked up the gun and shot the victim as he fled, defendant was present at the time of the killing, defendant had been slapped and threatened by the victim earlier that day, defendant told several people that day that he was going to kill the victim, defendant and his brother discussed some plan the night of the killing, defendant had been shot by the victim just previous to the killing and defendant had run across the street to get a jack iron, and immediately after the fatal shooting defendant beat the victim with the iron while the victim was lying on the floor.

2. **Homicide § 28— instructions — self-defense — defense of brother — aggressor**

In this prosecution of defendant for aiding or abetting his brother in the crime of manslaughter wherein there was evidence tending to show that defendant was initially attacked by the victim, who struck him with a pistol and shot him in the leg, and that defendant's brother entered the fight in defense of defendant, the trial court erred in giving the jury an unqualified instruction that one who voluntarily enters a fight is an aggressor and in failing to instruct that one is not an aggressor if he voluntarily enters a fight in defense of his brother.

APPEAL by defendant from *Lanier, Judge.* Judgment entered 30 January 1975 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 16 September 1975.

The defendant, Lesley Spencer, was charged in a bill of indictment, proper in form, with the murder of Harvey Ward on 9 September 1972. At the call of the case for trial, the District Attorney announced that the State would only seek a conviction on the charge of manslaughter. The evidence offered by the State tended to show the following:

On Saturday, 9 September 1972, between 4:00 and 5:00 p.m., the defendant told William Oscar Grady that earlier in the day Harvey Ward had slapped him in the face. Defendant was angry and said he was not going to let Ward get away with it. Between 4:30 and 5:00 p.m., defendant saw Arthur Moore at Moore's Snack Bar, known as a "piccolo parlor" or "juke joint" on Fourth Street in Washington, N. C. Defendant told Moore that Ward had slapped him and taken his money.

Around 8:00 p.m. Grady saw defendant again, this time on Fourth Street near defendant's car. The defendant's brother was also standing in the area. While Grady was talking with them, Officer Gilgo of the Washington Police Department, along with another officer, approached defendant and asked him about a gun in the back of defendant's convertible. Defendant said it was his and it was loaded. Officer Gilgo took the gun—part

shotgun, part rifle—and kept it. Gilgo told defendant he could pick the gun up on Monday. He also told him that Fourth Street was no place to settle an argument. Defendant responded that he was not going to be slapped around and that he was going to kill Ward if he came out that night. Gilgo also testified that prior to approaching the car, he and the other officer had seen defendant's brother, Respass Spencer, going from one "juke joint" to another on Fourth Street looking in the doors. They asked him what was the trouble, and he responded that there was not any trouble. After the police left, Grady talked again with defendant and his brother Respass. Grady told Respass to stay out of any trouble, and "not to do what they planned to do."

Between 8:00 and 8:30, defendant saw Ward's girl friend in Moore's Snack Bar. He told her that he was going to kill Ward. Later, on the street outside Moore's, where a group of people were gathered talking among themselves, defendant saw Ward's daughter and told her that he was going to kill Ward. Sometime afterward, as defendant was walking back toward the door of Moore's, he met Ward coming out the door. Ward and defendant exchanged some remarks, and Ward grabbed defendant by the collar striking him several times across the face with a pistol. He then fired the pistol three times toward the ground, shooting defendant in the leg. Defendant's brother, Respass, came out of Moore's and joined in the struggle. He and defendant wrestled Ward to the ground. Defendant broke loose and ran across the street to his car to get a "jack iron." The gun had fallen from Ward's hand in the struggle and Respass picked it up. Ward got up and ran back into Moore's. Respass shot him in the head as he went back through the door. Ward fell dead onto the floor of Moore's, facing toward the door. Soon afterward defendant entered and struck the deceased several times with the jack before being disarmed.

Defendant offered evidence tending to show the following: Between 2:00 and 2:30 p.m., defendant had been in an argument with Ward. Ward had taken a dollar of defendant's, slapped defendant in the face, and threatened to kill him. Defendant was angry but never told anyone that he was going to kill Ward. The gun that defendant carried in his back seat was for his own protection. He did not protest to the police when they took the gun, and he never related any threats to them that

State v. Spencer

he was going to kill Ward. The reason his brother was seen looking into "juke joints" earlier that night was because he was looking for his children. Later that evening defendant talked to Ward's girl friend and daughter but did not threaten to kill Ward. Instead, they taunted him.

Ward grabbed defendant by surprise as defendant was talking to another man outside the door of Moore's. He beat defendant with a pistol and then shot defendant in the leg. Defendant broke free and began running across the street.

Respass testified that at this time he came out of Moore's and saw Ward aiming the gun at defendant who was fleeing. Respass told Ward not to shoot his brother any more and Ward turned, aiming the gun at Respass. Respass grabbed Ward's arm and they struggled. Respass knocked the gun out of Ward's hand. Respass and Ward broke apart and Respass grabbed the gun. When he looked up, he saw Ward coming toward him with a cue stick from inside Moore's. Respass shot in self-defense as Ward came toward him. Ward fell in Moore's with his head toward the door.

Defendant, after he had run across the street, saw the two men in a scuffle. He took out the jack iron as a precaution when he heard the shots. He thought it was his brother who was shot and returned to see, taking the "iron" with him. He never hit the deceased, but when he saw it was not his brother, and was told that Ward was dead, he walked outside and gave the "iron" to the police after they arrived. Soon afterward, defendant went to the hospital to be treated for his injuries.

From a verdict of guilty and imposition of a prison sentence of not less than ten (10) nor more than twelve (12) years, defendant appealed.

*Attorney General Edmisten by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Carter and Archie by W. B. Carter, Jr., for defendant appellant.*

HEDRICK, Judge.

[1] The defendant assigns as error the denial of his motion for judgment as of nonsuit. Obviously, the State tried defendant for manslaughter on the theory that defendant aided and

abetted his brother in an unlawful killing of Ward. To prove its case against defendant, the State had to prove that defendant's brother, Respass, was guilty of manslaughter and also had to prove that defendant aided or abetted him in that unlawful killing.

Manslaughter is the unlawful killing of a person without malice and without premeditation and deliberation. *State v. Rummage*, 280 N.C. 51, 185 S.E. 2d 221 (1971); *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1970); *State v. Baldwin*, 152 N.C. 822, 68 S.E. 148 (1910). A person is guilty of manslaughter when the unlawful killing occurs while he is "under the influence of passion or in the heat of blood produced by adequate provocation . . . . " *State v. Wynne*, 278 N.C. 513, 518, 180 S.E. 2d 135, 139 (1971).

The State offered evidence to show that Respass had been struggling with Ward, that Ward lost his gun, that Respass picked up the gun, and that Respass shot Ward as he fled. When the evidence is considered in the light most favorable to the State, it is sufficient to show that Respass Spencer was guilty of manslaughter.

To prove that defendant aided or abetted Respass in the unlawful killing, the State must show that in some way defendant advised, procured, encouraged, or assisted his brother in the commission of the crime. *State v. Cassell*, 24 N.C. App. 717, 212 S.E. 2d 208 (1975), cert. denied 287 N.C. 261, 214 S.E. 2d 433 (1975); *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973). As stated in *State v. Hargett*, 255 N.C. 412, 415, 121 S.E. 2d 589, 592 (1961):

> "A person aids when, being present at the time and place, he does some act to render aid to the actual perpetrator of the crime though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or either commands, advises, instigates or encourages another to commit a crime." *State v. Holland*, 234 N.C. 354, 358, 67 S.E. 2d 272, 274; *State v. Johnson*, 220 N.C. 773, 776, 18 S.E. 2d 358. " . . . Mere presence, even with the intention of assisting in the commission of a crime cannot be said to have incited, encouraged or aided the perpetration thereof, unless the intention to assist was in some way communicated to him (the perpetrator) . . . . " *State v. Hoffman*, 199 N.C. 328, 333, 154 S.E. 314, 316. However,

there is an exception. " . . . when the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement, and in contemplation of law this was aiding and abetting." *State v. Holland, supra.*

Accord, *State v. Cassell, supra* at 721. In addition to the relationship of defendant to the actual perpetrator, other circumstances to be considered include the motive tempting defendant to assist in the crime, presence of defendant at the time and place of the crime, and conduct of defendant both before and after commission of the crime. *State v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5 (1952) ; *State v. Cassell, supra.*

In the instant case, the State offered evidence tending to show (1) that defendant was present at the time of the killing; (2) that defendant and Respass were brothers; (3) that earlier in the day defendant had been slapped and threatened by Ward; (4) that defendant had threatened to kill Ward several times on 9 September 1972; (5) that defendant and his brother had discussed some plan earlier that night; and (6) that defendant had been shot by Ward just previous to the killing and defendant had run across the street to get a "jack iron." The jury could find that Respass knew all this. In addition, immediately after the fatal shooting, defendant beat Ward with the iron while Ward was lying on the floor. This evidence, when taken in the light most favorable to the State is sufficient to allow the jury to find that defendant instigated, encouraged, aided or advised his brother in the unlawful killing of Ward. See *State v. Lesley Spencer,* 18 N.C. App. 499, 197 S.E. 2d 232 (1973), where on a former appeal this court held that the evidence was sufficient to require submission of the case to the jury on the theory that Lesley Spencer aided his brother, Respass Spencer, in the second degree murder of Ward. (The former appeal in the case of Respass Spencer for that murder is reported at 18 N.C. App. 323, 196 S.E. 2d 573 (1973).) This assignment of error is overruled.

[2] Defendant also assigns as error certain instructions to the jury on the right of self-defense and the availability of that defense to one who voluntarily enters a fight. In charging the jury on the right of Respass Spencer to act in defense of himself or defendant, the court instructed the jury that for them to find that Respass acted in self-defense they must find that "he

or his brother [defendant] was not the aggressor. *If he voluntarily entered the fight he was the aggressor unless he thereafter attempted to abandon the fight and gave notice to Ward that he was doing so.*" (Emphasis added.)

This identical instruction was attacked and found to be erroneously applied to the evidence of the cases giving rise to the former appeals of Respass Spencer and Lesley Spencer reported as cited supra.

A general rule with regard to self-defense is that the defense is *not* available to one who enters a fight voluntarily because he would thereby be an aggressor. *State v. Watkins,* 283 N.C. 504, 196 S.E. 2d 750 (1973); *State v. Davis,* 225 N.C. 117, 33 S.E. 2d 623 (1945). But, the crux of defendant's argument is that although Respass voluntarily entered the fight he was not an aggressor because one may come to the defense of members of his family, when that member of the family would be justified in defending himself. *State v. Hodges,* 255 N.C. 566, 122 S.E. 2d 197 (1961); *State v. Anderson,* 222 N.C. 148, 22 S.E. 2d 271 (1942); *State v. Respass Spencer, supra.*

From the evidence here presented, the jury could find that when defendant, Lesley Spencer, was initially attacked by Ward who struck him with the pistol and then shot him in the leg, he was justified in defending himself. By the same token, when Respass saw the fight between Ward and his brother, the jury could find, *he* was justified in entering the fight. Although such entry was voluntary, Respass would not be an aggressor since it was in defense of his brother. *State v. Respass Spencer, supra.*

In the present case, as before in *State v. Respass Spencer, supra,* the court's unqualified statement that one who voluntarily enters a fight is an aggressor, coupled with his failure to declare and explain that one is not an aggressor if he voluntarily enters a fight in defense of his brother, is erroneous. For the court's failure to properly declare and explain the law arising on the evidence, the defendant is entitled to a new trial.

We do not discuss the additional assignments of error, since they are not likely to occur at the next trial.

New trial.

Judges MORRIS and ARNOLD concur.